## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY ET AL. v. STATE OF TEXAS.

### No. 3153.   Decided April 30, 1924.

#### (261 S. W., 996.)

1.—Constitutional Law—Validity of Statute.

It is not the province of courts to determine whether a statute is abstractly valid or invalid. Mere allegation that it is void because in violation of the Constitution does not entitle the State to injunction against its enforcement.   (P. 577).

2.—Same—State as Litigant—Equitable relief.

The State as a litigant seeking equitable relief must, like other litigants invoking the aid of a court of equity, establish a case of equitable cognizance and a right to the particular relief demanded.   (P. 577).

·3.—Same.

The State will be denied equitable relief where the effect of the injunction sought will be only indirect, conjectural and uncertain. Thus, where it

seeks injunction against the issuance of passes by a railway, asserting that the statute authorizing them was violative of the Constitution, and upon the sole ground that their suppression would place the carrier in a position to serve the public at a lower rate, it must appear that such public interest would be subserved by the direct effect of the decree, and not enough that it merely placed the carrier in a position to serve the public with profit to itself at a lower rate. State v. Farmers' Loan & Trust Co., 81 Texas, 530, followed. (Pp. 577, 578).

4.—Railways—Free Passes—Constitutional Law—Unjust Discrimination—Classification.

Article 10, Sec. 2, of the Constitution did not require the Legislature to prohibit all discrimination in railway rates, but only to prevent unjust discrimination. It did not define the term; but, however it may be defined, the people thereby confided to the discretion of the Legislature the classification of passengers for the purpose of determining who should pay full fare, reduced fare, or no fare; and the classification adopted by it in the exercise of its discretion must be regarded as beyond judicial review, unless wholly without reasonable basis. (Pp. 579, 580).

5.—Same—Statute.

The statute defining the classes of persons who may be granted free or reduced transportation (Act of March 26, 1907, Laws, 30th Leg., p. 93, ch. 42, sec. 2, and amendment, Act of March 19, 1911, Laws, 32d Leg., p. 152, ch. 83, sec. 1) in classifying, as entitled to receive same, certain national, state and municipal officers, charged with protection of members of society in person or property, and designated persons engaged in charitable or religious work or meeting in the interest of service to the public, was not so devoid of reasonable basis for such classification as to entitle the courts to set aside the legislative discretion in so enacting, whatever might be their own view as to the wisdom or expediency of the statute. (Pp. 580, 581).

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The action was brought by the State through its Attorney-General, against the St. Louis Southwestern and forty other railroad companies operating in Texas, seeking to forbid the issuance by them of passes or reduced transportation to certain classes of persons to whom same was permitted, on the ground that the statute authorizing their so doing was invalid under the Constitution of the State. Judgment in the District Court was for the defendants and the State appealed. The Court of Civil Appeals reversed the ruling and awarded injunction (197 S. W., 1006). The appellees then obtained writ of error.

*E. B. Perkins, George Thompson, C. C. Huff, H. M. Garwood, J. W. Terry,* and *Hiram Glass,* for plaintiffs in error.

To entitle the Attorney General to maintain an action in the name of the State, it must be shown that he has an interest in the subject matter of the litigation, either in his own right or in a representative capacity, and a State is not exempt from this rule; such suit can not be maintained in behalf of the State when private rights alone are

involved. State v. Farmers' Loan and Trust Co., 81 Texas, 530; Houston Tap, & B. R. Co. v. Randolph, 24 Texas, 317; People v. Brooklyn F. & C. I. Ry. Co., 89 N. Y. 75; United States v. Chandler-Dunbar Water Co., 229 U. S., 63.

It rests with the Legislature to determine what, on the part of the railways, constitutes unjust discrimination, and to deermine what laws are necessary to prevent same. Article 10, Section 2 of the Constitution of Texas, commits to the Legislature the discretion as to what means and agencies may be adequate and advisable for the control of railroad corporations and the prevention of unjust discrimination. The discretion thus placed in the Legislature is beyond judicial control so long as the law is confined to the subject matter and the purpose for which the Constitution authorized it to be enacted. H. & T. C. R. Co. v. Harry & Bros., 63 Texas, 268; Moore v. Bell, 95 Texas, 151; Brown v. City of Galveston, 97 Texas, 8; H. & T. C. Ry. v. Rust & Dinkins, 58 Texas, 98; McCray v. United States, 195 U. S., 51; Johnson v. Railway Co., 16 Fla., 623; Ragan v. Aiken. 9 Lee (Tenn.), 609; Spofford v. Boston & Maine R. Co., 128 Mass., 326; U. S. v. Erie Railroad Co., 236 U. S., 259; C. & W. C. R. Co. v. Thompson, 234 U. S., 576; Sutton v. New Jersey, and Nibson v. New Jersey, 244 U. S., 259.

The Court of Civil Appeals erred in assuming authority, which the Constitution of this State commits to the Legislature, to determine what is unjust discrimination, and to substitute its judgment in the place of the judgment of the Legislature, and in assuming to say that the discretion which the Constitution vested in the Legislature had been unwisely exercised. Art. 10, Sec. 2, of the Constitution; Railway v. Harry Bros., 63 Texas, 268; Moore v. Bell, 95 Texas, 151; Brown v. City of Galveston, 97 Texas, 8; Railway v. Rusk & Dinkins, 58 Texas, 98; McCray v. United States, 195 U. S., 51; Spofford v. B. & M. R. R. Co., 128 Mass., 326.

*B. F. Looney,* Attorney-General, and *C. M. Cureton* and *Luther Nickels,* Assistants, for defendant in error.

The Attorney General is given the power and charged with the duty of filing suits of this character by the Anti-pass Statute itself. Section 9 of the statute,—General Laws of Texas, 1907, page 97,— makes it the duty of the Attorney General "to see that the provisions of this act are enforced and obeyed." This means, of course, the constitutional portions of the act must be enforced and required to be "obeyed," because no other provisions could be enforced. Kansas City M. & O. Ry. Co., v. State, 155 S. W., 561.

If Section 2 of the Anti-pass Act is void, in whole or part, the issuance of free passes by carriers is a violation of—(1) The valid portions of that statute; (2) Article 6670, R. S., 1911; (3) Article 1164,

R. S., 1911; State v. Farmers L., & T. Co., 81 Texas, 510; Railway Co. v. Hadley, 161 Fed., 422.

The Attorney General is expressly authorized to maintain suits of this character by Section 22, Article 4, of the Constitution without respect to the question of public injury, vel non. This section of the Constitution, among other things, requires the Attorney General to "take such action in the courts as may be proper and necessary to prevent any private corporation from exercising any power . . . not authorized by law." State v. Farmers' L. & T. Co., 81 Texas, 530, 547; Western U. Tel. Co. v. State, 121 S. W., 194.

But if it be true that a public interest or injury must be shown, the same sufficiently appears.

A. That the public interest is involved in the subject matter of this case is established by the adoption of the Constitution provisions, and the enactment of the statutes, bearing upon the question of discrimination. Gulf, C. & S. F. Ry. Co. v. State, 72 Texas, 404; Attorney-General v. Railroad Companies, 35 Wis., 553; State v. Pacific Exp. Co., 115 N. W., 619, 18 L. R. A. (N. S.), 664; Comer v. Burton-Lingo Co., 58 S. W., 970; State v. Racine Sattley Co., 134 S. W., 400; State v. County Club, 173 S. W., 570; Campbell Nat. Railroad Comrs. v. Chicago etc., R. Co., 17 L. R. A., 443; Kansas City, M. & O. R. Co. v. State, 155 S. W., 568; State v. M. J. & K. R. Co., 86 Miss., 200, 122 Am. St., 277; Same Case, 163 S. W., 502; State v. Sugarland Ry. Co., 163 S. W., 1047; Mexican Ry. Co. v. State, 174 S. W., 301; International & G. N. Ry. Co. v. Anderson County, 156 S. W., 499; Railroad Commission v. Galveston Cham. of Commerce, 115 S. W., 99, 137 S. W., 745; City of Louisville v. Telephone Co., 148 S. W., 16; State v. Union Pac. Ry. Co., 87 Neb., 29; McDuffee v. Portland & R. R. Co., 52 N. H., 430, 13 Am., 72; Scofield v. Railway Co., 43 Ohio St., 571, 54 Am., 846; Parsons v. Chicago & N. W. R. Co., 167 U. S., 455; Dinsmore v. L. C. & L. Ry. Co., 2 Fed., 469; Chicago & N. W. R. Co. v. People, 56 Ill., 365, 8 Am., 690; State v. Delaware L. & W. R. Co., 48 N. J. Law, 56, 57 Am., 543; State v. Nebraska Teleph. Co., 17 Neb., 126, 52 Am., 406; Central Elevator Co. v. People, 174 Ill., 203; State v. C. N. O. & T. P. R. Co., 47 Ohio St., 130.

B. The allegations of the petition,—which must be taken as true in determining this question,—state facts which establish a public interest in the subject matter of the suit and which show a material public injury growing out of the practices complained of.

Section 2, Article 10, of the Constitution of Texas declares all railways to be public highways and commands the Legislature to pass such laws as may be necessary to prevent discrimination on the different railroads of the State. This section does not confer authority upon the Legislature to pass a law legalizing, warranting

and inviting discrimination, nor does it authorize the Legislature to pass a law regulating discrimination, but, if it enacts a law upon the subject at all, it must prohibit discrimination. Lake Shore etc. R. Co. v. Smith, 173 U. S., 684; Wisconsin etc. R. Co. v. Jacobson, 179 U. S., 287, 301; Commonwealth v. Atlantic Coast Line R. Co., 55 S. E., 572; A. T. & S. F. R. Co. v. Campbell, 48 L. R. A., 251; Mc-Cully v. Chicago B. & Q. R. Co., 110 S W, 711; State v. M. K. & T. Ry. Co., 172 S. W., 35.

In Lake Shore, etc., Ry. Co. v. Smith, 173 U. S., 690, and Wisconsin, etc., Ry. Co. v. Jackson, 179 U. S., 287, 302, the allowance of a reduced rate,—not a "free rate,"—to "wholesale" purchasers of tickets was denounced as the "exercise of a pure, bald and unmixed power of discrimination in favor of a few of the persons having occasion to travel on the road," for which there was no justification, fact or law. The same thing is held in Commonwealth v. Atlantic Coast Line Ry. Co., 55 S. E., 572; Beardsley v. N. Y., L. E. & W. Ry. Co., 56 N. E., 488; A., T. & S. F. Ry. Co. v. Campbell, 48 L. R. A., 251; McCully v. C., B. & Q. Ry. Co., 110 S. W., 711; and State v. M. K. & T. Ry. Co., 172 S. W., 35. No authority,—certainly, no modern authority,—can be cited against the proposition.

The classification made by the exceptions is arbitrary and rests upon no justifiable basis of fact. The Legislature has not the right to impose a burden by simply placing it on all individuals of a certain class. It must rest upon some reason upon which it can be defended. S. A., etc., Ry. Co. v. Wilson, 19 S. W., 910.

When the Legislature said that Mr. A. can ride free of charge, simply because he happens to be an officer or a delegate, while Mr. B., the private citizen, must pay three cents per mile for the same service, it adopted an arbitrary and unjustifiable classification, and this, we believe, can be shown by authorities. G., C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150, 155, 159, 160; St. John v. New York, 201 U. S., 633; Southern Ry. Co. v. Greene, 216 U. S., 400; Holden v. Hardy, 169 U. S., 366; Ex Parte Jones, 143 S. W., 573; Ex Parte Overstreet, 46 S. W., 825; Poteet v. State, 53 S. W., 869; Rainey v. State, 53 S. W., 882; Pullman Car Co. v. State, 64 Texas, 274; Connolly v. Union Sewer Pipe Co., 184 U. S., 540; Kidd v. Pearson, 128 U. S., 1; Cook v. Marshall County, 196 U. S., 261; Hayes v. Missouri, 120 U. S., 71; Duncan v. Missouri, 152 U. S., 382; Cotting v. K. C. Stock Yds. Co., 183 U. S., 79; State v. Waters- . Pierce Oil Co., 67 S. W., 1057; State v. Shippers' Comp. & W. Co., 67 S. W., 1049; Brown & Allen v. Jacobs Pharmacy Co., 57 L. R. A., 559; State v. M. K. & T. Ry. Co., 172 S. W., 35; Jackson v. State, 117 S. W., 818; Niagara F. Ins. Co. v. Cornell, 110 Fed., 825; Pierce . v. Union, 103 Pac., 324; State v. Holland, 96 Pac., 719; State v. Union Pac. Ry. Co., 126 N. W., 859; Marshall v. Nashville Ry. &

Light Co., 101 S. W., 419; John v. Northern Pac. R. Co., 32 L. R. A. (N. S.), 85; McNeal v. Durham & C. R. Co., 67 L. R. A., 227; So. Pac. Ry. Co. v. Schuyler, 227 U. S., 601.

In concluding this branch of the discussion, we submit that the exceptions in the Anti-Pass Statute contravene: (1) Section 2, Article 10, of the Constitution of Texas, which prohibits "unjust discrimination." (2) Section 3, Article 1, of the Constitution of Texas, and the Fourteenth Amendment to the Constitution of the United States, which provisions guarantee equal rights and inhibit special privileges except in consideration of *public services*.

Mr. Justice Greenwood delivered the opinion of the Supreme Court.

Defendant in error, the State of Texas, by the Attorney General, instituted this suit to enjoin plaintiffs in error, being numerous railroad corporations organized under the laws of Texas, from issuing or honoring free passes to any persons or classes of persons other than employees.

The averments of the State's petition may be briefly stated as follows:

First: Each plaintiff in error had for years granted, and would, unless restrained, continue to grant free transportation to some members of the traveling public, while requiring others to pay passenger fares.

Second: Free mileage thus granted amounted each year to an average of twelve per cent. of the total passenger mileage of each plaintiff in error.

Third: Plaintiffs in error claim the right to issue and honor passes for free transportation of passengers under Section 2, of Chapter XLII, Acts of 1907, as amended by Chapter 83, Acts of 1911, defining the classes of persons entitled to free transportation. All provisions of said amended section, authorizing transportation on free passes or for less than regular tariffs of all persons except employees are void: because in contravention of Section 2, of Article 10, and Section 3, 19, and 28, of Article 1, of the Constitution of Texas; and because in violation of the Fourteenth Amendment to the Constitution of the United States.

Fifth: Plaintiffs in error are guaranteed by the Constitution and statutes the right to make such charges for transporting freight and passengers as may be necessary to yield a reasonable return on their investments over and above expenses of operation, interest on bonds, etc., and thousands of dollars are added annually to the operating expenses of each plaintiff in error by reason of free transportation of passengers.

By general and special exceptions and by special pleas, plain-

tiffs in error questioned the sufficiency of the averments of the petition to authorize the State to maintain the suit, and denied the grant of free transportation save in accordance with the terms of the statute, claimed to be valid.

On the trial, it was agreed that each plaintiff in error had transported, and would, unless restrained, continue to transport passengers free of charge, when holding passes issued under the terms of the challenged statute; and, it was proven that more than ninety-five per cent of the free transportation granted by plaintiffs in error, measured by mileage, was on passes to officers, agents, and employees, and members of their families.

The district court rendered judgment against the State, both on general demurrer and on consideration of the evidence.

On appeal, the Honorable Court of Civil Appeals at Austin reversed this judgment and enjoined plaintiffs in error from granting transportation in this State to any person without payment of the regular fare for passengers, except:

1.   To the necessary care-takers accompanying live-stock, poultry, melons, or other perishable produce, while such caretakers are en route and while returning.

2.   Trip passes to indigent poor when application therefor is made by any religious or charitable institution.

3.   To Confederate Veterans who are inmates of the Confederate Home, or who have been or may hereafter be admitted to such Home.

4.   To persons injured in wrecks upon the road of any railway company immediately after such injury, and the physicians and nurses attending such injured persons during the transportation of such injured persons.

5.   To persons carried in cases of general epidemics, pestilence, or other calamitous visitations at the time thereof or immediately thereafter.

6.   To persons procuring special rates for special occasions and under special conditions when such rates shall have been authorized by the Railroad Commission of Texas.

7.   To publishers, editors or proprietors of newspapers or magazines when transportation has been procured by contract of exchange of advertising space for such transportation; and when such contracts are in writing and have received the approval of the Railroad Commission of Texas and such exchanges made upon the same basis of charge as made to the public generally by the parties to the contract for like service; and when such contract is made on the basis of value received.

8.   To all persons actually employed and engaged in the service of any company, including its officers, bona fide ticket agents, passenger and freight agents, physicians, surgeons, general attorneys, and

attorneys who appear in court to try cases and who receive a reasonable annual salary; furloughed, pensioned and superannuated employes; persons who have become disabled or infirm in the service of a common carrier, and ex-employes traveling for the purpose of entering the service of a common carrier; the families of employees and of persons killed while in the service of a common carrier; persons actually engaged on sleeping cars and express cars; officers and employes of telegraph companies; newsboys employed on trains; railway mail service employes and their families; and chairmen and bona fide members of grievance committees of employes.

The judgment of the Court of Civil Appeals also permitted the exchange between one railway company and another, and between railway companies and certain other companies, of passes and franks for officers and employes and their families. Such decree also permitted the free transportation of articles being sent to any charitable institution or orphans' home.

We have concluded that the judgment of the District Court was correct for two reasons: first, because the State failed to plead or prove facts entitling it to equitable relief, though invalidity of portions of the statute be assumed; and, second, because the Constitution did not forbid but instead expressly authorized the Legislature to enact the statute.

It is not the province of courts to determine whether a statute is abstractly valid or invalid at the instance of the State or an individual. The mere averment that the Legislature violated the Constitution in authorizing free transportation to certain classes, if true, would not sustain the award of an injunction. Guadalupe County v. Wilson County, 58 Texas, 230; Cruikshank v. Bidwell, 176 U. S., 80, 44 L. Ed., 377; McCabe v. A. T. & S. F. Ry. Co., 235 U. S., 164, 59 L. Ed., 169. Nor does the additional allegation that free transportation, issued under the attacked provisions of the statute, adds to the carriers' operating expenses, suffice to make out a case entitling the State to relief in a court of equity. As stated by Mr. Pomeroy: ''When the State as plaintiff invokes the aid of a court of equity, it is not exempt from the rules applicable to ordinary suitors, that is, it must establish a case of equitable cognizance and a right to the particular relief demanded.'' 4 Pomeroy's Equity Jurisprudence, (4th Ed.), Section 1752.

No injunction sought by the State could directly diminish the charges of plaintiffs in error for transporting passengers. At most, the effect of the injunction must be indirect, uncertain, and conjectural. That the State will be denied injunctive relief, under such circumstances, is regarded as settled by the carefully considered opinion of this court through Chief Justice Stayton in State of Texas v. Farmers' Loan & Trust Co., 81 Texas, 530, 17 S. W., 60. There

13 Tex.—37.

the State by Attorney General Hogg sought cancellation of mortgage bonds of the International & Great Northern Railroad Company on allegations to the effect that such bonds were invalid and that since the bonded debts of railroad companies were considered in establishing railroad rates, cancellation of the bonds would result in lowering of rates for transportation of persons and property in Texas. In holding that neither Section 22, of Article 4, of the Constitution, nor any other provision of the Constitution nor any statute sustained the right of the State, through the Attorney General, to maintain such an action, the court said:

"If in this case the court had retained jurisdiction and on final trial had granted all the relief the State asked, what good could have been accomplished by it through which the public would have been benefited. It would not be contended that the court could legally have made and enforced an order that the railway company, after the cancellation of the bonds alleged to be invalid, should transport freight or passengers at rates lower than the maximum fixed by law.

"Courts can not give equitable or other relief to the State as the representative of public interest upon the sole ground that this may place a railway company in a position in which without injury to itself or creditors it might serve the public at a lower rate with profit to itself than could it if such equitable relief was not given, when under positive legislation no legal obligation would rest on the corporation to make the burden on the public less than the law expressly authorizes . . . To maintain such an action under the general rules governing equitable procedure it must be made to appear that the public interest will be subserved through direct effect of the decree itself; and it is not enough to enable the State to maintain the suit that the decree to be entered would show the ability of the railway company to serve the public with profit to itself under a rate lower than the maximum fixed by law."

The Honorable Court of Civil Appeals determined that the portions of the statute which were void were those authorizing free or reduced transportation as follows:

(1) To federal officers—such as health officers, marshals, deputy marshals, post-office and customs and immigration inspectors, and persons accompanying shipments of fish for free distribution in the waters of the State.

(2) To state, county and municipal officers—such as Railroad Commissioners, Dairy and Food Commissioner, Superintendent of Public Buildings and Grounds, Game, Fish and Oyster Commissioner, Live Stock Sanitary Commissioners and Inspectors, health officers, rangers, militiamen, sheriffs, constables, certain deputy sheriffs and deputy constables, city marshals, policemen and firemen.

(3)   To persons engaged in works of religion or charity such as ministers, sisters of charity or members of like religious organizations, managers of Young Men's Christian Association or other eleemosary institutions while engaged in charitable work.

(4)   To delegates to certain conventions or gatherings such as farmers attending institutes, congresses, etc., and firemen attending state and district meetings; and, to a limited number of officers and employees of industrial fairs.

The view of the Court of Civil Appeals was that exemption of the classes just enumerated from payment of full passenger fares was forbidden by Section 2, of Article X, of the Constitution in the following language: "The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State, and enforce the same by adequate penalties."

The constitutional provision does not undertake to define or prohibit discrimination. It does command the Legislature to pass laws to prohibit extortion. It authorizes and directs the Legislature to enact laws defining "*unjust* discrimination" in freight and passenger tariffs by railroads and imposing penalties for "*unjust* discrimination" which will prove adequate for its prevention.

It is not improbable that the word unjust was used in this section in the sense ascribed to it by Bouvier as "that which is opposed to a law which is the test of right and wrong." Bouvier's Law Dictionary, 3376. If so used, practices in harmony with the legislative will would necessarily come without the scope of "*unjust* discrimination." Article 6670 of the Revised Statutes being paragraph H of Section 15 of the original Railroad Commission Act expressly declares that the statutory definition of, and prohibition against "*unjust* discrimination" shall not prevent railroads from giving free or reduced transportation under such circumstances and to such persons as may be permitted by law.

But, whatever meaning should be ascribed to the word unjust, two things seem perfectly plain in construing Section 2, of Article X, of the Constitution, towit: first, that all discrimination in passenger fares was not forbidden, but only such as would operate unjustly, Houston & T. C. Ry. Co. v. Rust & Dinkins, 58 Texas, 110 and Interstate Commerce Commission v. B. & O. Railroad, 145 U. S., 276, 277, 36 L. Ed., 699; and second, that the people confided to the discretion of the Legislature the classification of passengers for the purpose of determining those who should pay full fare, reduced fare, or no fare; and, the classification adopted by the Legislature, in the exercise of its discretion, must be regarded as beyond judicial review, unless wholly without reasonable basis. Lewright v. Love,

Comptroller, 95 Texas, 157, 65 S. W., 1089. Middleton v. Texas Power & Light Co., 108 Texas, 110, 185 S. W., 556.

The contention of the State, sustained by the decree on appeal, is that the Legislature's classification is arbitrary in part only, because, to that extent, resting on no basis in reason. The decree recognizes as lawful the discriminations allowed to the extent of more than ninety-five per cent of the free transportation of passengers by railroad. The condemned portions of the statute may be conveniently divided into provisions favoring public officers and provisions favoring individuals performing no governmental duty.

The public officers to whom grants of free passes are authorized by the statute are certain national, state, county, and municipal officials, whose duty it is to protect the members of society in person or property from harm or disaster occasioned by disease, fire, fraud, negligence or crime. It is of the highest concern to the State to secure efficiency in the performance of such duties. The conscientious legislator might reasonably conclude that higher efficiency on the part of these officers in the discharge of their duties would follow the grant of free railroad transportation. Such considerations fully warranted the exercise of legislative discretion in such way as to withdraw these officers from the classes required to pay passenger tariffs.

We consider even less subject to attack the condemned portions of the statute favoring certain classes holding no official positions. The statute authorizes favored treatment of persons engaged in religious or charitable work. The Supreme Court of the United States evidently concluded, in determining the case of Interstate · Commerce Commission v. B. & O. Railroad, supra, that the nature of the service rendered by religious and charitable workers and the resultant benefits in which all share would prevent an extension to them of free transportation from necessarily constituting *unjust* discrimination even though not expressly sanctioned by statute. The conclusion seems inescapable that this particular exemption from passenger charges may be highly promotive of the public weal in lifting far more of burdens from the public than are imposed through any increase thus occasioned in the cost of passenger transportation. Much the same may be said of the grant of special consideration to delegates to farmers' institutes and congresses and firemen's meetings and to agents of industrial fairs. It is common knowledge that the public interest is subserved by such meetings and fairs. It is as well known that many in the greatest need of the service rendered by these meetings could not attend if payment had to be made of full passenger fares. It was for the Legislature and not for this Court to weigh the public advantage or detriment in putting those attending these meetings and conducting these fairs in the class re-

quired to pay full fares or in the class required to pay less or nothing. On the whole, it is enough to forbid judicial destruction of any portion of the legislative classification, in performing a duty clearly laid upon the Legislature by the people through the Constitution, that we find ourselves unable to declare that the statute anywhere goes beyond the bounds of reason.

In reaching a conclusion as to the reasonableness of the classification made by the Legislature, it matters not what might be the opinion of the members of this Court as to the wisdom or expediency of the statute. As said by the Supreme Court of the United States, through Justice Harlan: ''The fundamental law of the State committed these matters to the determination of the legislature, If the law making power errs in such matters, its responsibility is to the electors, and not to the judicial branch of the government. The whole theory of our government, Federal and state, is hostile to the idea that questions of legislative authority may depend upon expediency, or upon opinions of judges as to the wisdom or want of wisdom in the enactment of laws under powers clearly conferred upon the legislature.'' Hennington v. Georgia, 163 U. S., 304, 41 L. Ed., 166.

There being reasonable ground for the legislative classification of persons with respect to payment and non-payment of passenger fares, and the law affecting equally all persons similarly situated under similar circumstances, the statute is not invalid under the provisions of Article I, of the State Constitution or of the fourteenth amendment to the Constitution of the United States. Supreme Lodge U. B. A. v. Johnson, 98 Texas, 5, 81 S. W., 18; Ft. Worth & D. C. Ry. Co. v. Frazier, 191 S. W., 813; Marchant v. Pennsylvania Railroad, 153 U. S., 390, 38 L. Ed., 751.

It is ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court, which is in accord with this opinion, be affirmed.