ENGLISH FREIGHT CO. v. KNOX.

No. 9433.

Court of Civil Appeals of Texas. Austin.

May 3, 1944.

Rehearing Denied May 24, 1944.

634

Callaway & Reed and O. D. Montgomery, all of Dallas, for appellant.

Renne Allred, Jr., of Austin (Devereaux Henderson, of Houston, of counsel), for appellee.

BLAIR, Justice.

Appellee, Will G. Knox, as Receiver of United Employers·Casualty Company, sued appellant, English Freight Company, a corporation, for $14,529.17 as additional premiums and debits due on three policies of insurance issued by UEC to C. T. English, an individual doing business as English Freight Company before he incorporated his business under the same name, and on a fourth policy on which appellant corporation admitted liability. Appellee alleged that appellant corporation assumed all of the liabilities of English on policies issued to him; and that having acquired all of the assets the corporation became liable for all of the debts of the individual English business. Appellant denied that it assumed such policy liabilities, and pled the two-year statute of limitation. The trial to the court without a jury resulted in judgment for appellee as prayed; hence this appeal.

The three policies issued by UEC to C. T. English were on standard forms of workmen's compensation and employer's liability policies prescribed by the Insurance Commission. The premium and debit liabilities established thereon were based 1) upon additional premiums due because of improper classifications of employees thereunder; and 2) upon a "debit charge", which arose from the loss experience of the policyholder, and which, if greater than the average, increased, on a percentage basis determined by the Commission, the

normal or manual rate stated in the policies. The amount of the liabilities fixed by the judgment on the three policies issued to C. T. English is not contested.

On the issue of the assumption of the liabilities for the premiums and debits due on the policies, appellant corporation presents numerous contentions, which are here considered under four groups of points as follows:

Point 1. That appellant corporation did not assume the premium and debit liabilities on the policies issued to English.

Point 2. That if appellant corporation did assume such liabilities on two of the policies, the suit of appellee thereon was barred when filed under the two-year statute of limitation.

Point 3. That agreements were made between English and appellant corporation on the one hand, and the UEC on the other, for certain classifications of employees under the policies involved and the payment of premiums on such classifications, and which had been fully executed; and that the receiver as representative of UEC could not repudiate such agreements though illegal, and could not cause them to be adjudicated herein.

Point 4. That as applied to the rates, classifications and debits here involved the Workmen's Compensation Statutes are unconstitutional under the due process clauses of both the State and the Federal Constitution, in that they failed to provide for notice and hearing before the orders of the Insurance Board were made, and failed to make any provision for an appeal to the court from such order. And alternatively it is contended that the debit liabilities sought to be recovered herein were illegal and arbitrarily assessed by the Insurance Board, and were assessed without notice to appellant.

■ With respect to Point 1, the facts fully support the findings and conclusions of the trial court that appellant corporation began operation of the incorporated business of English on October 21, 1939, and that on that date it assumed the liabilities of C. T. English dba English Freight Company on the three policies issued to him. The facts will be stated in substance.

■ Prior to October 21, 1939, C. T. English, an individual dba English Freight Company, owned and operated as sole manager a large common carrier motor truck freight business over the Texas highways, under a certificate issued to him by the Texas Railroad Commission. He also operated interstate under a certificate issued to him by the Interstate Commerce Commission. On October 21, 1939, English incorporated his individual business, using the same name, English Freight Company, for the corporation as he had used for his individual business. At this time English, under the guise of the corporation, took over as sole manager of the corporation, and continued the operation of his former individual business, which the court found he incorporated for the purpose of attempting to defeat his liabilities on the policies here sued upon. The private business was not sold to the corporation, but its charter recited that all the properties of the private business were received in consideration of the issuance of $300,000 of stock, all of which, except two qualifying shares of $25 each, went to English. The same equipment and business facilities were used after the incorporation as were used by the individual business of English. The assets and properties of the individual business constituted the sole assets of the corporation. The place of business remained the same, and the agents and employees of the individual business were retained by the corporation from the date of its incorporation, on October 21, 1939. It took out a policy of insurance on some of its employees, which was dated October 21, 1939, and was effective until October 21, 1940. On March 1, 1940, in a sworn application to the Interstate Commerce Commission, there appears over the signature of Clarence T. English, signing individually and as president of the corporation, the statement: "Clarence T. English, the individual, trading as English Freight Company, has merely incorporated his business." The corporation operated under the state and federal certificates issued to C. T. English until after the death of English in 1941. Nothing was said or done about the debts and liabilities of the individual business of English at the time it was taken over and operations began under the guise of the corporation, and the corporation assumed them as a matter of law under the rule stated in 10 Tex.Jur., 1016, § 353, as follows:

"In absence of an express undertaking to pay the debts of a predecessor, there is a presumption that it was intended that a

corporation organized to take over all the assets of its predecessor should assume its liabilities also."

Also, under the facts detailed, the corporation was merely the alter ego of English or his individual business, and the rule stated in 18 C.J.S., Corporations, 522, 523, § 121, is applicable. It reads as follows:

"Where an individual or sole trader organizes a corporation to take over his business and all his assets, and it becomes in effect merely the alter ego of the incorporator, the corporation, either on the grounds of implied assumption of the debts or on the grounds that the business is the same and is merely being conducted under a new guise, is liable for the incorporator's preëxisting debts and liabilities."

Numerous Texas cases have adopted this rule, among which are: Victoria Gravel Co. v. Neyland, Tex.Civ.App., 114 S.W.2d 415, writ dismissed; Maffi v. O'Neil, Tex. Civ.App., 138 S.W.2d 134, affirmed Wellington Oil Co. of Delaware v. Maffi, 136 Tex. 201, 150 S.W.2d 60; Hunger v. Toubin Bros., Tex.Civ.App., 164 S.W.2d 765, writ dismissed; Cattle Raisers' Loan Co. v. Sutton, Tex.Civ.App., 271 S.W. 233; East Texas Title Co. v. Parchman, Tex. Civ.App., 116 S.W.2d 497.

The further contention made under Point 1 is not sustained. It is that the corporation did not begin operation of the English business until January 1, 1940, at which time a written instrument of that date transferred and assigned the assets of the English business to the corporation; and that Paragraph 3 of the instrument limited the liability of the corporation for the debts of the English business as follows:

"English Freight Company agrees to assume and pay all of the liabilities shown on Exhibit A as above referred to, which are specifically identified by said books of the English Freight Company, the new corporation, and Clarence T. English."

In arguing to this point, appellant states that "it was not within the contemplation of the parties that there would or could be any claim for additional premiums on the policies issued to C. T. English," and in consequence there could be no intention to assume such liabilities.

Having assumed the debts of the private business of English as of October 21, 1939, the parties to the incorporation of it could not subsequently limit the liability of the corporation to certain debts as appellant contends was done by the written instrument of January 1, 1940. The corporation was merely the alter ego under the guise of which English continued his private business. In consequence, to permit him to limit the liability of the corporation to the payment of certain debts would simply permit him to contract with himself not to pay the debts of his private business. To permit the corporation by subsequent contract with English to limit its liability for debts already assumed at the time of incorporation, would also permit it to contract with itself, as concerns creditors whose debts it had already assumed, not to pay them.

Moreover, the proof of appellant did not show that the debts sued upon by appellee were by Paragraph 3 of the assignment excluded from the debts expressly assumed thereby. On the contrary, the proof offered would support a finding and conclusion of the trial court that the corporation thereby assumed in writing the liabilities of English dba English Freight Company on the three policies issued to him.

The "Exhibit A" referred to in the written instrument is admitted to be the "balance sheet as of January 1, 1940," introduced in evidence by appellant. It was shown to be the balance sheet of English Freight Company, the corporation. Under "liabilities" and in fact under the subhead "current liabilities", there appears the following item, "Accounts payable, $20,-983.86."

R. F. Barber, the bookkeeper for the individual business and also the bookkeeper, auditor, vice-president and director of the corporation, testified that:

"The amounts involved in all of these policies are set up on the English Freight Company books and also on Clarence T. English's doing business as English Freight Company books, in an account with other insurance items, and Accounts-Payable account."

Appellant had possession of its books referred to, but did not introduce them in evidence. The "accounts-payable" show a large item of indebtedness, more than here sued for, and Barber positively testified that the "amounts involved in all of these policies are set up" on the books of both the corporation and English, in the "accounts-payable account." Since the books were not offered to show that this

item did not include the debts sued upon, a strong presumption arises, having probative force, that the debts sued upon were included. Green v. Scales, Tex.Civ.App., 219 S.W. 274; 17 Tex.Jur. 306, § 87.

The argument in this connection that "it was not within the contemplation of the parties that there would or could be any claim for additional premiums on the policies issued to C. T. English," is not tenable. English knew of these liabilities, and the trial court found, "that on or about October 21, 1939, C. T. English, for the purpose of attempting to be relieved of the debit of 49.9% as promulgated by the Board of Insurance Commissioners as applicable to the business of C. T. English, incorporated his business."

■ By Point 2 it is contended that the suit of appellee for the premiums and debits due on two of the policies issued to English was barred under the two-year statute of limitation. One of these policies was dated August 14, 1938, and expired August 14, 1939, and the other was dated August 14, 1939, and expired August 14, 1940. This suit was filed June 26, 1942. Under these facts and our holding herein that appellant corporation assumed in writing the premium debits and liabilities on the policies issued to English individually, the two-year statute of limitation has no application. Only the four-year statute of limitation would apply to the suit on the written assumption agreement.

Appellant contends, however, that its plea of limitation was addressed to the cause of action asserted by appellee against it on the implied assumption agreement which came into existence on October 21, 1939, or January 1, 1940, according to appellant's view; and that in consequence the cause of action filed on January 26, 1942, was barred by the two-year statute of limitation. Its plea of the two-year limitation reads:

"Pleading further, defendant would allege and show that its predecessor, C. T. English, paid all of the premiums on the policies of Workmen's Compensation insurance described in paragraphs 4 and 5 of plaintiff's petition in accordance with the agreement of the parties as set out in paragraph 4 of this answer, and that the additional premiums and debits sued for by plaintiff on said policies are not obligations assumed and agreed to be paid by the said C. T. English, and the same are barred by the Two-Year statute of limitation, which defendant here now pleads in

bar of such additional premiums and debits on said policies; and this it is ready to verify."

We interpret the plea as not being addressed to the suit of appellee on any oral or implied assumption agreement. It is addressed specifically to the premium debits and liabilities of English on the policies issued to him. It does not allege that the limitation period began to run from October 21, 1939, the date of the incorporation; or from January 1, 1940, the date appellant claimed it began operation of the business. Nor does it allege that the claim made against the corporation was barred. It merely alleges that the additional premiums and debits sued for were not to be paid by English under the agreement with the insurance company, and additionally that English did not assume or agree to pay such obligations, and that same are barred by the two-year statute of limitation. Glasscock v. Hamilton, 62 Tex. 143.

■ The two-year statute of limitation is not applicable to the suit of appellee to recover the premium debits or liabilities on the policies issued to C. T. English. Actions for premiums on a written insurance policy come within the four-year statute of limitation. Brown & Root v. Traders & General Ins. Co., Tex.Civ.App., 135 S. W.2d 534. Whether the assumption of the premium debits and liabilities on the policies issued to English was oral or in writing would not affect the statute of limitation applicable to the suit on the written insurance policies, which is the four-year statute of limitation.

The foregoing conclusions sufficiently dispose of the limitation question aside from any question of fraud with respect to the concealment of the facts as to the corporation's liability on the policies, and which was not discovered until after the original suit was filed. Suffice it to say that the cause of action set up by the amended pleadings with respect to the false affidavits of English and Barber as to stock ownership in the corporation, made for the purpose of showing the non-liability of the corporation for the liabilities of English on the policies, and which induced the Insurance Board to order the liability clause stricken from the policies, was not barred by the two-year statute of limitation.

■ The effect of fraudulent concealment of a cause of action on the opera-

tion of a statute of limitation is stated in 28 Tex.Jur., 164, 165, as follows:

"Nothing is better settled than the rule that the fraudulent concealment of a cause of action by the defendant, accompanied by the plaintiff's failure, after exercising ordinary diligence, to discover the concealment, will avoid bar of the statute of limitations. 'The reason of the rule is that a party cannot in good conscience avail himself of the statute when his own fraud has prevented the other party from knowing his rights.'"

■■■ Point 3 presents the several related contentions that English and appellant corporation paid all premiums on the policies issued to English under agreements with UEC to classify the employees covered and to pay rates on such classifications, and with waiver of payment of, or agreement not to pay, the additional premiums and debits provided for in the policies and rules and regulations of the Insurance Board; that if such agreements were illegal, the parties thereto were in pari delicto in making them, and that in consequence the UEC could not collect or enforce the additional premium and debit provisions of the policies; and that the receiver as the representative of the UEC in the receivership proceeding could not repudiate the agreements though illegal, they having been fully executed, and the receiver could not have them adjudicated herein. These contentions are not tenable.

Appellant concedes that these several arrangements made with UEC were illegal. They were in violation of the insurance laws and the rules and regulations of the Insurance Board applicable to the policies issued to English, and of the provisions of the policies themselves, and were therefore void. Neither of the parties to these illegal agreements would be permitted to set them up as a defense against the innocent third party beneficiaries under the insurance policies, nor the creditors of the insolvent insurance company.

In Texas Employers Ins. Ass'n v. Russell, 127 Tex. 230, 91 S.W.2d 317, 319, it is held:

"A contract to issue a policy based upon a less rate than that prescribed by the insurance commission would be contrary to law and therefore void. The question presented is analogous to that of freight charges by railroad companies."

See also Houston & T. C. R. Co. v. Johnson, Tex.Com.App., 41 S.W.2d 14, 83 A.L.R. 241; and Texas & N. O. R. Co. v. Yates, 139 Tex. 89, 161 S.W.2d 1050.

In Brown & Root v. Traders & General Ins. Co., Tex.Civ.App., 135 S.W.2d 534, 537, error dismissed, it is held: .

"A carrier of workmen's compensation insurance and its policy-holder necessarily contract with each other that the premium rate shall be the duly and lawfully prescribed rate for the risk involved, and none other. They are without power by contract, or otherwise, to alter such prescribed rate. So, if the parties may not consciously and intentionally change the lawfully prescribed rate, their knowledge, ignorance, or negligence is equally incompetent to work any such change."

Other Texas cases sustaining this rule are: Daniel v. Tyrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372; Commercial Union Assurance Co. v. Preston, 115 Tex. 351, 282 S.W. 563, 45 A.L.R. 1016; Crawford v. McCorkle, Tex.Civ.App., 153 S. W.2d 334; Amarillo Nat. L. Ins. Co. v. Brown, Tex.Civ.App., 166 S.W. 658, error refused; United Employers Casualty Co. v. Pearlman Auto Parts & Supply Co., Tex. Civ.App., 173 S.W.2d 374, error refused; Scanlan v. Home Ins. Co., Tex.Civ.App., 79 S.W.2d 186, error refused; Bowen Motor Coaches, Inc., v. New York Casualty Co., 5 Cir., 139 F.2d 332.

In Minney v. Furman, Lawrence & Parker, Tex.Civ.App., 286 S.W. 287, 288, it is said:

"* * * and said defense is of no avail because the Legislature had provided a state insurance commission which is required to fix rates and neither the insurance companies nor their agents have any power or authority to fix rates or write policies at any rate different from those promulgated by it."

And in Thompson v. First State Bank of Amarillo, 109 Tex. 419, 211 S.W. 977, 978, it is held that:

"The plea of his own wrong by one in default is a weak plea at best. When urged against innocent third parties, equity refuses to give it sanction save in those exceptional instances where they [the creditors] are charged with knowledge of the invalidity of the transaction. Lord Mansfield asserted as an indisputable proposition * * * that 'as against an innocent party, no man shall set up his own iniquity as a defense.'"

Under the foregoing rules the appellant corporation could not in a suit to which it was a party set up the illegal agreements with UEC, the insolvent insurance company, and in consequence the receiver could not set them up as the representative of UEC. Moreover, the receiver not only represents the insolvent insurance company, but he also represents its policyholders, the beneficiaries under the policies, the creditors, and is the representative of the public interest in the enforcement of the insurance laws as applicable to the policies of an insolvent insurance company.

In Shaw v. Borchers, Tex.Com.App., 46 S.W.2d 967, 968, the court say:

"It is true the general rule is that the receiver of an insolvent corporation has no greater rights than those possessed by the corporation itself. There is, however, a well-defined exception to such rule. A receiver of such a corporation acts in a dual capacity. He is a trustee both for the stockholders and the creditors. As trustee for the creditors, he is permitted to maintain and defend actions involving acts done in fraud of creditors, even though the corporation would not be permitted to do so."

See 53 Cor.Jur., 325, § 538b.

Another rule inhibits appellant corporation from setting up the illegal transactions or agreements as a defense to its liabilities on the policies issued to English. It is that although an illegal agreement is incidentally involved, the illegality will not prevent recovery if the plaintiff can establish his case without reliance on the illegal agreement. The illegal agreements here involved were made entirely apart from and in violation of the provisions of the policies of insurance involved and the rules and regulations of the Insurance Board applicable thereto. The issue of pari delicto was injected not by the receiver but as a defensive matter by one of the parties to the illegal agreements. The policies sued upon were approved by the Insurance Board and were upon their face and otherwise entirely valid. The illegal agreements were not incorporated in the policies, but were apart from them. City of Galveston v. O'Mara, Tex.Civ.App., 146 S.W.2d 416, affirmed City of Galveston v. Heffernan, 138 Tex. 16, 155 S.W.2d 912.

The contention that the receiver is barred from action on the policies because the illegal contracts or agreements had been fully executed is overruled upon the authority of Brown & Root v. Traders & General Ins. Co., supra. The contention that one may rely on accord and satisfaction consummated by an illegal transaction is not tenable. Bowen Motor Coaches v. New York Casualty Co., supra.

Point 4 presents the contentions that the Workman's Compensation Statutes (Arts. 4679c, Vernon's Ann.Civ.Sts., and 4907–4912 R.S.1925) and particularly Art. 4912, relating to fixing by the Insurance Commission of the rate, classification, form of compensation policy, and the premium and debit liability thereon, violate constitutional due process of law, because (1) no court appeal from any such order is specifically provided for by the statutes; and (2) neither notice nor hearing is afforded by the statutes before an order on such matters is made by the Commission.

At the times involved Art. 4912 did not specifically provide for an appeal to the court for redress on any order made by the Commission under the statutes. It was amended by the 48th Legislature, Acts 1943, c. 355, p. 614, Vernon's Ann.Civ. St. art. 4912, to provide that "any party aggrieved shall have the right to apply to any Court of competent jurisdiction to obtain redress." A statute does not violate constitutional due process of law merely because it does not specifically provide for an appeal to the court from orders made by boards or commissions in administrative proceedings. Such right of appeal will be implied, or arises under the constitutional guaranties of due process of law, if the matter is one so protected.

In 16 C.J.S., Constitutional Law, p. 1289, § 629, the rule is succinctly stated as follows:

"Statutes prescribing administrative proceedings frequently provide expressly for an appeal to the courts; but since the right to such an appeal is secured by the constitutional guaranties of due process, and every statute is presumed to be valid, the omission of such an express provision from a statute does not render it void, the right of appeal being implied."

In the case of Marrs v. Railroad Commission, 177 S.W.2d 941, 950, the Supreme Court held with respect to the right of appeal from an order of the Railroad Commission that the constitutional guaranties of due process of law authorized recourse to the court independently of the statute;

and that, "We hold that in such a case our Constitution guarantees a trial of such issues as in other civil cases." Gulf, C. & S. F. R. Co. v. American Sugar Refining Co., Tex.Civ.App., 130 S.W.2d 1030, error refused.

Nor is the contention tenable that constitutional due process of law is not afforded by Art. 4912, because it does not provide for either notice or hearing before the Commission enters its order fixing the premium and debit liabilities on compensation policies. The premium and debit liabilities are merely a part of the rates prescribed by the Commission, and are provided for in the policies and the riders attached under order of the Commission. Art. 4912 gives any aggrieved party "a hearing before the Commission on any grievance occasioned by the promulgation of any classification, rate or policy form," fixed or approved by the Commission. Constitutional due process of law as regards administrative proceedings requires but one adequate hearing, which Art. 4912 affords by this quoted provision.

The case of United Employers Casualty Co. v. Pearlman Auto Parts & Supply Co., Tex.Civ.App., 173 S.W.2d 374, 375, error refused, want of merit, holds as follows:

"Under above statutes, we think that the power to determine the classification of a business for the purpose of determining the rates of compensation insurance premiums applicable thereto is vested exclusively in the Board of Insurance Commissioners of the State of Texas, and that it was not the intention of the legislators in enacting said Article 4912 to restrict this power by any requirement of notice or hearing to the insurer, but that its purpose was to grant to both the insurer and the policyholder the right to be heard 'on any grievance occasioned by the promulgation of any classification,' said hearing to be held upon request of the aggrieved party after the promulgation of the order complained of, and that under said Article 4912 it was necessary for a party to a compensation insurance policy to first submit a grievance occasioned by a change of classification to the Insurance Commission in the absence of pleading and proof that such action by the Commission was an arbitrary, confiscatory, discriminatory or unjust exercise of such power vested in the Commission."

This last contention that the compensation statutes do not provide constitutional due process of law in the administrative proceedings before the Commission presents particularly an abstract academic question, because appellant sought or was offered the opportunity to present its grievance to the Commission with respect to the additional premium and debit liabilities on the policies involved. We are also of the view that all questions relating to the constitutionality of the statutes present merely abstract questions, because appellant was offered the opportunity to present any question with respect to the legality of premium and debit liabilities sought to be recovered in this suit, both before the Commission and on the trial in the court from which this appeal is taken. The pertinent facts as to these questions will be stated under the remaining point of this appeal.

Point 4 presents the alternative contention that the additional premium and debit liabilities with respect to Policy WC–12316 here involved were illegal and arbitrarily assessed by the Commission, and were assessed without notice.

Policy WC–12316 was issued by UEC to appellant corporation, effective from October 21, 1939, to October 21, 1940, at the manual rate, but with the rider attached providing for additional premium and debit liability on "loss experience." Appellant claimed that it did not take over the private business of English until January 1, 1940. The Commission had promulgated a rule that where a private business was incorporated with more than 51 per cent of the stock owned by other than those who owned the private business, the debit liabilities on policies held by the private business or individual on employees would not be transferred to the corporation. English represented that the corporation was such a separate legal entity. The Commission discovered in September, 1940, that English owned all the stock of the corporation except two qualifying shares of $25 each, and that he had merely incorporated his private business, which the trial court upon sufficient evidence found was attempted to be done to evade liability for additional premium and debit liability on the policies, including Policy WC–12316. On September 27, 1940, the Commission approved an endorsement assessing the 49.9 per cent debit on this policy, which was based upon loss experiences. On October 1, 1940, English made an affidavit that a large part of the

stock had been purchased by the other individuals named, which was filed with the Commission March 13, 1941. Appellee was appointed receiver of UEC on March 18, 1941, and promptly made demand on the corporation for the payment of all the premium and debit liabilities here sued for. Thereafter, on May 2, 1941, Barber, the vice-president of the corporation, made affidavit that the stock described in the English affidavit had been actually issued in the fall of 1939. These affidavits were on the trial admitted to be false. Based on these affidavits the Commission suggested to appellee receiver that it would approve an endorsement to remove the debit assessment on Policy WC–12316. Appellee did not submit the endorsement, but on June 26, 1942, filed suit based on the elimination of the debit liability, and took the deposition of Barber, wherein he admitted the falsity of the aforementioned affidavits. Whereupon, appellee filed his amended petition to include the debit as originally ordered by the Commission on September 27, 1940.

The Commission after notice held an informal meeting on September 1, 1942, at which time appellant did not appear, and the two Commissioners present, one being absent, signed an order confirming the order of September 27, 1940, which was the original order assessing the debit liability on said policy; and which order found that the affidavits as to stock ownership theretofore presented to it were false.

After the hearing of September 1, 1942, appellant orally requested a hearing on the debit assessment. The hearing was set for November 30, 1942, due notice thereof being given to all parties, at which hearing all Commissioners were present as well as counsel for appellant, and two of its vice-presidents, R. F. Barber and C. L. Callaway, and at which time appellant failed or refused to offer any evidence as to the illegality or incorrectness of the order assessing the 49.9 per cent debit on Policy WC–1236, and at which hearing the following questions were asked and answered by counsel for appellant:

"Mr. J. P. Gibbs: Put it this way. Now, having knowledge of the rate that the Board deems proper and legally applicable in this case, do you wish to ask for any hearing before the Board to consider that rate? It that what you want?

"Mr. Callaway: I will answer that question by saying that we do not want any rate particularly retroactive put in effect against English Freight Company until such steps legally required including the hearing have been taken.

"Mr. Renne Allred: Do you want any kind of hearing to determine what rate should be applicable?

"Mr. Carl Callaway: No, sir."

After this hearing before all the Commissioners they signed an order reaffirming the previous acts of the Commission assessing the debit in question.

The contention is made that appellant had no notice of this hearing. The record shows that the notice was addressed to "English Freight Company"; that it was received by appellant corporation before the date of the hearing; and that, in any event, its aforementioned representatives were present.

In answer to the suit of appellee on the debit liability of Policy WC–1236, appellant denied liability, pled that the compensation statutes denied constitutional due process, and that the cause of action thereon was barred by the two-year statute of limitation. It sought on the trial to prove that the debit assessed on the policy was not based on loss experience, but rather on reserved losses. The proof and judicial admissions showed however that the debit was assessed on the basis of actual loss payment and liability.

 Under the foregoing facts appellant was actually afforded constitutional due process both in the proceedings before the Commission and on the appeal to the court. Where due process has actually been afforded under the enforcement of a statute, the courts are not required to determine the abstract question of its validity. St. Louis, S.W. R. Co. of Texas v. State 113 Tex. 570, 261 S.W. 996, 33 A.L.R. 367. Since appellant did not offer proof or show damage as the result of the debit assessment provided for under its policy contract, it cannot complain that the statute authorizing the assessment was unconstitutional. Zachary v. City of Uvalde, Tex. Com.App., 42 S.W.2d 417. And since appellant invoked the provisions of the statutes for its own benefit, and having written its contracts in accordance therewith and accepted the benefits thereof, it cannot deny their constitutionality. Texas

Underwriters v. Martinal, Tex.Civ.App., 140 S.W.2d 582; United States v. R. L. Dixon & Bro., D.C., 36 F.Supp. 147.

The judgment of the trial court is affirmed.

Affirmed.