**MORRISON et al. v. SEWELL.  (No. 2870.)***

Court of Civil Appeals of Texas. Amarillo.
Oct. 5, 1927.

Rehearing Denied Nov. 30, 1927.

**1. Trial ☞350(4)—In action on employment contract under which plaintiff was to share in profits after certain deductions were made, requested special issues as to amount of deductions should have been given.**

In suit on contract of employment under which plaintiff was to take share of profits after making certain deductions, requested issues as to reasonable value of services of third person, value of equipment lost, and amount of worthless checks and accounts should have been given.

**2. Appeal and error ☞1078(4)—Errors assigned in motion for new trial, but not urged in reviewing court, are waived.**

Where error was assigned in motion for new trial on court's refusal to submit certain issues, but points were not urged in appellate court by any propositions based thereon, such points were waived.

**3. Trial ☞350(4)—In action on employment contract under which plaintiff shared in profits, issue as to amount of net profits held one of mixed law and fact.**

In action on employment contract under which plaintiff was to share in profits after certain deductions were made, issue as to what net profits of entire business were between certain dates held to be one of mixed law and fact.

**4. Appeal and error ☞672—Error in that issue given was of mixed law and fact is not fundamental.**

Error in that issue given in action on employment contract was one of mixed law and fact is not fundamental, since reviewing court would be required to go to statement of facts in order to decide it.

**5. Master and servant ☞70(3)—In action on employment contract under which plaintiff was entitled to share of net profits, defendant held not entitled to deduction for depreciation of new machinery.**

In action on employment contract under which plaintiff was entitled to receive share of net profits and under which defendant received monthly rental for use of buildings, machinery, and equipment, defendant held not entitled to deduction for depreciation of new machinery, since deterioration in value of manufacturer's plant and equipment by reason of use cannot generally be allowed as expense in absence of express agreement where machinery was not damaged to extent requiring repairs.

**6. Fraudulent conveyances ☞269(1)—Plaintiff suing on employment contract alleging facts showing employer's sale of business was voidable need not further specifically plead or prove failure to comply with Bulk Sales Law.**

Where plaintiff suing on employment contract alleged facts showing that employer's sale of business was voidable in that sale was made without payment of plaintiff's debt and without notice to plaintiff, and that sale was not in regular prosecution of business, it was not necessary for plaintiff to make further specific allegations or proof showing failure to comply with other requirements of Bulk Sales Law (Vernon's Ann. Civ. St. 1925, arts. 4001–4003) so as to render buyer liable.

**7. Pleading ☞375—Plaintiff need not prove more than is necessary to recover, though alleged.**

Plaintiff need not prove more than is necessary to recover, though more be alleged.

**8. Fraudulent conveyances ☞182(1)—Buyer of business without notice to seller's employee is personally liable for amount due under employment contract under Bulk Sales Law.**

Under Bulk Sales Law (Vernon's Ann. Civ. St. 1925, arts. 4001–4003), buyer of business which was sold without notice to employee is personally liable for seller's debt to employee under contract of employment.

**9. Corporations ☞519(1)—Where stockholder, owner of business, transferred assets to corporation, corporation is presumed to have assumed debts and is prima facie liable therefor.**

Where owner of business transferred assets to corporation in which he owned capital stock, corporation is presumed to have assumed debts of business and is prima facie liable therefor.

**10. Appeal and error ☞854(2)—Correct judgment will not be reversed because based on mistaken theory of law.**

Where correct judgment has been rendered, it will not be reversed because trial court based it on mistaken theory of law.

**11. Appeal and error ☞846(6)—In action on employment contract under which plaintiff was entitled to share in net profits, reviewing court will not determine whether jury made mistake in making deductions, in absence of separate findings on disputed items.**

In action on employment contract under which plaintiff was entitled to share of proceeds after certain deductions were made, in which no separate findings on items to be deducted were insisted on, reviewing court will not determine whether jury made mistake in making deductions, notwithstanding testimony of foreman, since court does not know what items were considered and is not required to go into tedious investigation of record to ascertain such fact, especially when conclusion in such case would be merely hypothesis.

**12. New trial ☞143(4)—Juror cannot impeach verdict by testifying to mistake in calculations.**

Juror is not permitted to impeach verdict by testifying that mistake was made in computing deductions from gross profits to determine net profits of defendant's business, which it was required to do under special issue submitted.

Appeal from District Court, Hale County; Charles Clements, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused.

Action by C. W. Sewell against J. N. Morrison and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Graham & Graham, of Plainview, for appellants.

L. C. Penry, of Stamford, for appellee.

HALL, C. J. On April 30, 1925, the appellant J. N. Morrison owned a creamery and bottling works in the city of Plainview, and on that date contracted with the appellee, Sewell, to assist him in the business. The substance of the written contract is: That on May 1 an inventory should be taken of everything in the way of raw materials and all merchandise in stock either for sale or manufacturing purposes, also all bottles, tubs, cans, cases, and any other thing that may be used in the sale of manufactured products. That a complete statement of all assets and liabilities showing the actual condition of the business on May 1st should also be made. It is further stipulated: That all operating expenses were to be deducted; this to include repairs, but not machinery broken or damaged, repairs on automobiles, and trucks, including casings, oil, and gasoline used in the operation of the business; also, all taxes and insurance on the plant, and interest on $6,000 now owing on machinery by Morrison; also, all necessary traveling expenses to be paid out of the business." That any accounts contracted during the life of the written contract, which were lost, should be deducted from the net profits of the business. It was further provided that Morrison was to receive a monthly salary of $150 and the further sum of $250 per month for the use of buildings, machinery, and equipment of all kinds used in the business, that Sewell was to receive $150 per month as salary, and that on December 31st of each year, during the life of the contract, a complete inventory, the same as the first, should be taken, and that the net profits as shown by the difference between the inventories, "after deducting all of above items, shall be divided as follows: First party to receive two-thirds, and second party to receive one-third." It is expressly provided that the contract is simply an employment contract, and that the part received by Sewell from the profits of the business was understood to be additional compensation, and that no partnership agreement had been formed. It further provided that the contract should be in force until December 31, 1925, provided only that after Morrison makes a bona fide sale of the plant, in which event the contract was to be terminated, and the net profits to be figured as if it was the end of the year.

It appears from the record that about the 1st of December, 1925, Morrison organized a corporation known as the Plains Coca-Cola Bottling Company, and that M. A. Marcus purchased the stock in 1927. On May 12, 1927, Sewell filed this suit against Morrison, Marcus, and the corporation, alleging that the net profits of the business during the time amounted to $4,916.16, and that he was entitled to one-third thereof, or $1,638.72. Marcus and the corporation answered by general denials, and Morrison answered by general denial and specially pleaded, among other matters which he claimed should be deducted from the gross earnings, loss caused by depreciation of new machinery and equipment purchased after the execution of the contract, and further specially pleaded worthless accounts, "cold checks," and the loss of bottles, which should be deducted from the gross earnings in arriving at the net profits. Such other portions of the pleadings as may be necessary in considering the several propositions will be hereinafter set out.

No auditor was appointed to audit the books and accounts of the parties.

The court submitted only one special issue, as follows:

"What do you find, from all of the facts and circumstances before you, were the net profits, if any, from the entire business of the Plainview Creamery, from May 1, 1925, to December 31, 1925?"

To which the jury answered:

"We, the jury, find the net profits of the business $4,820.31."

[1] Based upon this verdict, the court rendered judgment for Sewell in the sum of $1,606.77, with interest from the 1st day of January, 1926, at the legal rate. The judgment was rendered the 22d day of February, 1927. The appellant requested several special issues, which the court refused to give; one relating to the reasonable value of the services of Mrs. J. N. Morrison; another, asking what was the value of bottles and other equipment lost; and a third, inquiring what was the amount of dollars and cents of worthless checks and accounts, at the close of the business. These issues should have been given. H. E. & W. T. Ry. Co. v. Snelling, 59 Tex. 116, 122.

[2] Error was assigned in the motion for new trial, upon the court's refusal to submit these issues, but the points are not urged in this court by any propositions based thereon and are waived.

[3, 4] Under all of the pleadings and evidence, we think the issue given was one of mixed law and fact (Watson v. Patrick [Tex. Civ. App.] 174 S. W. 632), but no proposition is urged upon that point, and the error is not fundamental since we are required to go to the statement of facts in order to decide it.

[5] Complaint is made by the first proposition that the court erred in sustaining the plaintiff's exception to that part of Morrison's answer wherein he claimed a deduction for depreciation to the extent of $735.67, of new machinery, which he had purchased.

We think the court properly sustained the exception.

Deterioration in the value of the manufacturer's plant and equipment by reason of use cannot, as a general rule, be classed and allowed as an expense to be deducted in the absence of an express agreement to that effect. Mack v. Shortle, 76 App. Div. 586, 79 N. Y. S. 109. The machinery, the deterioration of which is referred to, was not damaged to such an extent as to require repairs during the life of the contract, and items not involving expenditures during the term of the contract should not be deducted. Swaller v. Williamson Milling Co., 116 Kan. 329, 226 P. 1001. Moreover, the contract expressly provided that Morrison should be allowed the $250 per month for the use of buildings, machinery, and equipment of all kinds used in the business, from which stipulation it may be reasonably inferred that such sum was, within the contemplation of the parties, to be deducted generally, in lieu of deterioration to any particular part of the machinery. What is here said disposes of the first four propositions.

[6, 7] Under several propositions it is insisted that the court erred in rendering judgment against the Plains Coca-cola Bottling Company, and holding it liable under what is known as the Bulk Sales Law (Vernon's Ann. Civ. St. 1925, arts. 4001–4003), because Sewell's petition did not allege that the bottling company and Morrison had failed to comply with all of the requirements of the Bulk Sales Law. He did allege that Morrison sold and transferred the merchandise, fixtures, and equipment to the bottling company, without first paying his debt to the plaintiff and without giving notice of the sale to plaintiff, or without giving notice that the business was about to become incorporated, and that that corporation did not, within 10 days before taking possession of the business, notify the plaintiff in person or otherwise, as required by law, of such transfer and sale of business, and that the sale and transfer were out of the ordinary and usual course of trade, and not in the regular prosecution of said business. The proof shows that some of these things were not done, and under the law the sale was voidable. So it was not necessary for the plaintiff to make further specific allegations or proof showing a failure to comply with any other requirement of said law. Smith-Calhoun Rubber Co. v. McGee Rubber Co. (Tex. Civ. App.) 235 S. W. 321. Plaintiff need not prove more than is necessary to recover, though more be alleged. Ellerd v. Murray (Tex. Civ. App.) 247 S. W. 631. It appears that the corporation was organized about the last of November, or 1st of December, 1925, and that Morrison was the owner of all of the stock and the business was conducted as before, until December 31, when the second inventory was attempted to be taken. No judgment was rendered against Marcus, who bought the stock pendente lite.

[8] It does not appear from the record that the court rendered a judgment against the bottling company, under the provisions of the Bulk Sales Law, but if it be admitted that it was so rendered, still, under the holding in Gardner v. Goodner Wholesale Gro. Co., 113 Tex. 423, 256 S. W. 911, it was personally liable for the debts incurred by Morrison.

[9] But, aside from the Bulk Sales Law, it was shown that Morrison owned the original business known as the "Plainview Creamery," and the uncontradicted testimony shows that the assets of the creamery "went in as assets to account for and pay for the capital stated in the incorporation, and that consisted of the capital stock of the Plains Coca-Cola Bottling Company, and in that way the business was transferred from Morrison to the corporation." Morrison so testified. Morrison was the owner of the capital stock in the corporation, and under such circumstances the corporation is presumed to have assumed the creamery's debts and is prima facie liable therefor. 1 Fletcher, Cyc. Corp. § 399; Modern Dairy v. Blanke (Tex. Civ. App.) 116 S. W. on p. 154; Texas Loan Agency v. Hunter, 13 Tex. Civ. App. 402, 35 S. W. 399, 402; Brooks v. Bonner (Tex. Civ. App.) 149 S W. 564, 567; Curtis, Jones & Co. v. Smelter Nat. Bank, 43 Colo. 391, 96 P. 172; Du Vivier v. Gallice (C. C. A.) 149 F. 118; Cook on Private Corporations, pp. 346, 347.

[10] Where a correct judgment has been rendered, it will not be reversed because the trial court based it upon a mistaken theory of the law.

[11, 12] The appellant filed a motion for rehearing alleging that there was a unanimous mistake on the part of the jury, in that certain deductions which the jury had unanimously agreed that the defendant was entitled to have were not deducted from the figures representing the amount of the claim asserted by plaintiff, and it was a clerical mistake on the part of the jury entitling the appellant to a new trial. Upon a hearing of this motion, A. G. Cox, the foreman of the jury, alone testified. His testimony is: That the settlement showed that the net profits were something over $5,000. That the jurors had various ideas of what ought to be deducted therefrom, which was the only point of disagreement. That they deducted and discussed several items, which they thought should come off of that sum.

"And as a result of our deliberations, there was a unanimous agreement on the part of the jury that the balance remaining and showing the true net profits of the business, was the amount stated in our verdict. Some of them would contend for one item, and some of them for another. I had my individual ideas and line of figures from which I calculated was right, and others had like ideas about it, and after

discussing the matter there was such a concensus between us that we reached the amount stated in our verdict, and after having reached that amount, we returned that as the verdict of the jury, and the amount returned was the result of the joint opinions of the jury boiled down to the point where we could all agree on the amounts."

The appellant cites the case of Caylat v. H. E. & W. T. Ry. Co., 113 Tex. 131, 252 S. W. 478, as authority sustaining his proposition. That case is not authority because there the error was purely clerical in transcribing a verdict different in amount from that already arrived at. This is not a case where a new trial should have been granted by reason of the misconduct of the jury. No misconduct is urged by this proposition. Since no separate findings upon the various items in dispute have been insisted upon, we do not know what items were taken into consideration by the jury in arriving at the amount of gross profits, nor what specific items were deducted in fixing the amount of the verdict. We are not required to go into a tedious investigation of the record and make definite calculations to ascertain this fact. If this were done, our conclusion would be merely a hypothesis, and our action cannot be based upon a guess. Moreover, the rule is that a juror is not permitted to impeach the verdict in this way. Twichell v. Klinke (Tex. Civ. App.) 272 S. W. 283; Wills Point Bank v. Bates, 72 Tex. 137, 10 S. W. 348; G. H. & S. A. Ry. Co. v. Contois (Tex. Com. App.) 288 S. W. 154; Harvey v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) 261 S. W. 197.

There being no reversible error shown in the record, the judgment is affirmed.