## MEADOWS v. MITCHELL et al.
### No. 8615.

Court of Civil Appeals of Texas. San Antonio.
May 20, 1931.

Carter & Stiernberg, of Harlingen, for appellant.

Greenwood & Lewis, of Harlingen, for appellees.

COBBS, J.

This suit was by appellant to recover the sum of $3,149.96 from appellees. It was alleged that D. B. Meadows and M. E. Mitchell owned an undivided one-half interest in a certain office building in Harlingen, Cameron county, Tex., known as the Commerce Building; that M. E. Mitchell and his wife, Grace B. Mitchell, appellees, purchased a one-half interest in the said building and the lots on which it was situated, from John Baker, about July, 1928, and shortly thereafter appellant acquired the other one-half interest from John Baker, each party assuming one-half of a loan in favor of the Jarrett Mortgage Company, of San Antonio. Appellant and appellee continued to operate this building until some time in March, 1929, when a corporation known as the "Commerce Building, Inc., of Harlingen, Texas," was formed, and each party received one-half of the capital stock of said corporation, in consideration for their one-half interest in said building. Prior to such incorporation, on February 7, 1929, an installment of the Jarrett mortgage came due and, the building having no net earnings, the Mitchell family paid $1,600.01, and appellant, D. B. Meadows, paid $1,600.01, to discharge the same; these obligations having been assumed by the individuals in their deeds from John Baker. These payments were credited to their respective personal accounts in the ledger. In the conveyance from appellant and appellee and his wife to the corporation, the Commerce Building, Inc., of Harlingen, Tex., the corporation did not assume the Jarrett loan. On August 1, 1929, another installment on the Jarrett mortgage became due, and the corporation not having funds from which to pay the installment, appellant and appellee each paid the sum of $1,549.95, which was credited to their personal accounts in the ledger. In December, 1929, appellant sought to sell, and appellee Mitchell sought to purchase, the interest of appellant in and to the corporation and everything incident thereto and the building and everything incident thereto, for a net consideration of $23,878.20; it being understood that appellee was, in the same transaction, reselling the property to Harry Landa, and appellee Mitchell was obtaining the entire property, the sum constituting an agreed settlement, purchase, and sale for $25,000 for all the interest of appellant and the net amount of account stated to be $23,878.20, as aforesaid. In this contract appellee Mitchell agreed to assume and hold appellant free and acquitted from the obligations of the corporation and all the mortgages and liens against the real estate. Appellee Mitchell not only purchased the entire interest of appellant, but further agreed to assume the obligations appellant owed and to indemnify the appellant by reason of the same. Appellant agreed to make proper transfer and delivery of all the property conveyed upon the consummation of the deal, but the record does not disclose that such transfers from appellant to appellee were ever made.

This suit was brought by appellant against the corporation claiming that the corporation agreed to indemnify him for the payments made by appellant on his obligation to the Jarrett Mortgage Company, totaling $3,174.96, and interest, and also sued appellee Mitchell on the theory that said sum was the debt of the corporation, and that in the contract of purchase and sale Mitchell assumed the payment of the debt. After hearing all the testimony the court instructed the jury to return a verdict.

The charge of the court constituted fundamental error, provided there was any evidence whatever to go to the jury. This is largely a fact case, and we have searched the record in vain to find any agreement, express or implied, to bind appellees to repay, under any circumstances, the money advanced by appellant in payment of the corporation debts. The agreement between Meadows and Mitchell was that they would go out and secure money to pay Jarrett, due to the fact that the company did not have any money on hand, with the distinct understanding between them that the company

would pay them back with interest. Mr. Meadows testified that the parties deeded the building to the Commerce Building, Inc., and that the consideration for this deed was "that we would transfer the building and all of the assets, together with the accounts which were then owing to us by the partnership, together with the idea of this corporation assuming all of the liabilities, so far as the Jarrett Mortgage was concerned, or Mr. Mitchell and myself." He also testified that the building so conveyed to the Commerce Building, Inc., was worth around $200,000, and that the only reason the capital stock was not made for more than $50,000 was that the parties wanted the corporation to pay a dividend. Mr. Meadows further testified that after the building had been deeded to the corporation in July, there was another payment came due on the mortgage on August 1, 1929, and, the corporation not having the funds with which to meet the payment, Mr. Meadows and Mr. Mitchell each advanced $1,549.95, which sum was advanced to the corporation; "the agreement was that money was to be credited to the loan account and paid back to each of us by the corporation." Both of these advances were carried on the books of the company, and the pages of the company's books where these advances have been credited to the parties appear on pages 38 and 39 of the statement of facts.

Upon this issue it is the contention of appellant that the court in instructing the verdict erred in holding that the corporation did not assume the sum of money sued for by the plaintiff. On the question of assumpsit Mr. Meadows testified that the advances were to be treated as loans to the partnership and to the corporation, to be repaid to the parties making the advances, with interest.

While it is true the books of the company showed the items named and perhaps thereby showed loans and advancements to the corporation, but that would not justify the unqualified construction that the corporation by any act assumed their payment.

■■ Under the rules of law in Texas it is the duty of the court to submit every contested fact to the jury. Young v. Blain (Tex. Com. App.) 245 S. W. 65; Peerless Fire Ins. Co. v. Barcus (Tex. Civ. App.) 227 S. W. 368; Davis v. Wagner (Tex. Civ. App.) 237 S. W. 612. And that was required in this case.

The only evidence tending to prove that the corporation did not assume these advances appears in the testimony of Mr. Mitchell, who says that "Mr. Meadows was entitled to that credit as an additional investment, but not as a loan." It is almost uncontradicted that these advances were to be treated as loans, and to be repaid to the parties making them by the corporation, but the corporation did not expressly assume the obligations of the partnership; it was only an implied assumption that it would pay them. 10 Tex. Jur. p. 1018; 1 Fletcher, Cyclopedia Corporation, par. 379, p. 796. So also to the same effect is Modern Dairy & Creamery Co. v. Blanke & Hauk Supply Co. (Tex. Civ. App.) 116 S. W. 153, 154, and Thompson on Corporation (3d Ed.) vol. 4, par. 2438, p. 20.

In the case of Modern Dairy & Creamery Co. v. Blanke & Hauk Supply Co., supra, the court used the following language: "If there had been any proof that the corporation had been formed by the members of a partnership that had incurred the debt, and that the assets of the partnership had been assigned to the corporation for the continuance of the business, it could be presumed that the corporation assumed the partnership debts, and would be prima facie liable therefor. Cook, Priv. Corp. pp. 346, 347. Nothing appears in the record, however, on which to base such a presumption."

The language of the court in this case clearly indicates that had there been evidence that the corporation was formed by members of the partnership for the purpose of continuing the business and all of the assets assigned to the corporation, then the corporation would be liable for the debts of the old partnership. This question does not seem to have been directly passed upon by the courts of this state. In the case of Morrison et al. v. Sewell et al. (Tex. Civ. App.) 4 S.W.(2d) 1029, it was held that where the owner of a business transferred the assets to a corporation, in which he owned the capital stock, the corporation is presumed to have assumed the debts of the business as prima facie liable therefor. The court said, in passing on this question: "Where owner of business transferred assets to corporation in which he owned capital stock, corporation is presumed to have assumed debts of business and is prima facie liable therefor."

We have reached the conclusion that there was no evidence of the implied assumption of the debt sufficient to pass the question to the jury with instructions.

The judgment of the court is affirmed.

SMITH, J.

I concur in the result.