## VICTORIA GRAVEL CO. v. NEYLAND.

### No. 10212.

Court of Civil Appeals of Texas. San Antonio.

Feb. 16, 1938.

Rehearing Denied March 16, 1938.

J. W. Ragsdale, of Victoria, and T. J. O'Brien, J. L. Shapiro, and Edgar Monteith, all of Houston, for appellant.

Linebaugh & Guittard, of Victoria, for appellee.

SMITH, Chief Justice.

This suit was brought by O. L. Neyland against Victoria Gravel Company, successor to Victoria Material & Gravel Company, to recover upon three promissory notes executed by the latter company in favor of Neyland, evidencing consideration for a sand and gravel lease assigned by Neyland to the Material & Gravel Company, upon which the latter, during its existence, operated its business, and upon which its successor, the Victoria Gravel Company, has since operated, and still operates, the same business. The suit against Victoria Gravel Company was based upon allegations that that company, as successor to the original obligor company, assumed to pay said notes. Upon favorable jury findings Neyland recovered against Victoria Gravel Company, which has appealed. Other parties are involved, but need not be noticed in this opinion.

In 1931 Victoria Material & Gravel Company was organized and incorporated for the purpose of mining and selling gravel. The corporation purchased from O. L. Neyland, and the latter conveyed to it, a sand and gravel lease at the agreed price of $2,000 and such additional amounts as Neyland might be required to advance to keep the lease "alive," which advancements he made in the aggregate sum of $600. Although the corporation and its successor have been using and enjoy-

ing the lease ever since, no part of said agreed purchase price has ever been paid to Neyland, who instituted this suit to recover upon the notes evidencing that debt. The stockholders of the corporation were Geo. E. Cole (president), C. C. Carsner (secretary-treasurer), Herman Brown, and H. S. Wilder. Cole was not only the president of the corporation, but was in fact and practice its general manager, and had and exercised complete control of its affairs and operation, with the full knowledge and acquiescence of the directorate. In addition to its debt to Neyland for the purchase price of the lease, and for advancements, amounting to $2,600, as stated, the corporation also became indebted to Cole and Wilder, directors, for advancements, in the sums of $2,100 and $2,000, respectively, as well as numerous other debts to third parties for supplies and the like.

Neyland severed his connection with the corporation in December, 1932. He repeatedly demanded payment of his claim, but the corporation, languishing, could not pay it, nor could it pay its other creditors, who, apparently, were becoming importunate. In order to stave off the impending day of reckoning, the corporation hit upon the device of giving its several creditors its notes, payable in the future, covering the claims, with accrued interest. Among those to whom those notes were issued, simultaneously, were the corporation's directors, Cole and Wilder, and Neyland, each of whom accepted the obligation, thereby acquiescing in that mode of settlement. Neyland's claim was thereby postponed for two years.

The largest creditor of the corporation was Brown & Root, Inc., of which George Brown was the controlling stockholder. He was a brother of Herman Brown, director of the Gravel Company, and a stockholder in Brown & Root, Inc. A creditor of the Gravel Company, apparently Brown & Root, Inc., obtained judgment in a federal court against the corporation, and George Brown acquired that judgment by assignment. Execution was issued upon the federal court judgment, and the properties of the gravel corporation were levied upon in pursuance of that execution. Before the property was sold under execution, however, Brown and Root, and George Brown, and the directors of the gravel corporation, G. E. Cole, H. S. Wilder, Herman Brown, and C. C.

Carsner, entered into a written agreement providing for the organization of a new corporation, to be named Victoria Gravel Company, with double the capital of the old corporation, and with the same stockholders and directors, with the addition of George Brown, to take over the assets of the defunct corporation, and operate the business with the same assets and plant upon the same location and lease. It was provided in that agreement that George Brown, owner of the federal court judgment, should buy in the property at the ensuing judicial sale, and convey it to the new corporation; that the new corporation should "assume and agree to pay off and satisfy the lawful and valid outstanding present debt due and owing by said (defunct) corporation," in the manner and order therein specified, to wit, by giving preference and priority, respectively, to the claims of (1) George Brown, and Brown & Root, Inc., (2) certain general creditors named in an annexed schedule, and (3) a balance due Brown & Root, and the notes of the old corporation held by its directors, Geo. E. Cole and H. S. Wilder. The claim of Neyland was not named in the list of claims in the above-mentioned class (2), nor was it specifically mentioned anywhere in the agreement.

In pursuance of the preorganization agreement, Victoria Gravel Company, the new corporation therein provided for, was duly organized and chartered with the same directorate as the old, to which George Brown was added. As agreed, Brown purchased the property at the ensuing judicial sale and conveyed the same to the new corporation, which proceeded, as also agreed, to take over and operate the same business as that conducted by the old company, with the same equipment, in the same plant, in the same location, in virtue of the same lease as that assigned to the old corporation by appellee, Neyland, in consideration of the agreed purchase price of $2,600, which is represented by the notes here sued upon by Neyland. The new corporation was more successful than the old, and out of the profits derived from the operation of the plant has paid off most of the debts incurred by the old corporation and assumed by the new under the preorganization agreement.

Upon a jury trial Neyland recovered judgment against Victoria Gravel Company (and others not necessary to men-

tion here)' for the amount of said notes, together with foreclosure of an implied vendor's lien upon the gravel lease which Neyland had assigned to the former company, and upon which the new corporation is operating said business. Victoria Gravel Company has appealed.

As stated in appellee's brief: "The jury found (1) that the old company agreed to pay Neyland for an assignment of the gravel lease, (2) that the amount agreed upon was $2,600.00, (3) that the notes were not to be paid out of profits only, (4) that the old company earned profits from the operation of its plant on the lease sufficient to pay the notes, (5) that the new company assumed all of the debts of the old company, (6) that Neyland did not agree that the payment of his debt was to be postponed until the old company had paid its debts to Wilder, Cole and Brown, stockholders in the old company, (7) that the old company did not agree to pay Neyland any sum of money to reimburse him for money paid out and services rendered in testing the lands covered by the gravel lease, in the nature of a 'bonus,' and (9) that the new company assumed payment of the notes sued on."

■ It is first contended by appellant that the notes in suit were ineffectual to bind the old corporation because their execution by Cole, as president, and Carsner, as secretary-treasurer, was unauthorized by the corporate directors. The record shows the corporation purchased the lease from appellee at the agreed price stated, and entered upon and operated its plant thereon· throughout its corporate existence, with the full knowledge and acquiescence of its directors. The obligation to appellee was admitted and recognized upon the minutes of the corporation. The corporation, by resolutions duly passed and entered upon the minutes, authorized Cole and Carsner to borrow money and execute notes to secure money for the purpose of operating the business, and to issue notes to cover current obligations and thereby postpone the due dates of such obligations. To this end, and with the knowledge and acquiescence of the directorate, Cole and Carsner did execute notes of the corporation to each of its numerous creditors, including appellee and two of its directors, Cole and Wilder, and Brown & Root, Inc. All those notes were given to cover past-due debts of the corporation, as a device for postponement of those debts. By this device the corporation was enabled to continue operations for the time being, thereby benefiting by the forbearance of creditors, including appellee, induced by their acceptance of the device. From the facts stated we conclude that the acts of Cole and Carsner in executing said notes were impliedly, if not expressly, authorized by the resolution of the directorate, considered in connection with the board's official recognition of its obligation to appellee; that the acts were within the apparent authority of Cole, who was not only president of the corporation, but was its general manager, having and exercising complete control and management of its affairs throughout its corporate life, with the knowledge and consent of its directorate. 14A C.J. p. 358, § 217; 10 Tex. Jur. pp. 999 et seq., §§ 322, 325, 342; Knox City Milling Co. v. Warren, Tex.Civ.App., writ refused, 141 S.W. 1007; Galveston-Houston Interurban Land Co. v. Dow, Tex. Civ.App., writ refused, 193 S.W. 353. We overrule appellant's propositions 1, 2, 3.

■ The trial judge submitted to the jury the issue of whether appellant assumed to pay the debt of the old corporation to appellee, evidenced by the notes in suit. The jury answered the issue in the affirmative. In its fourth proposition appellant complains of this submission, upon the ground that the assumption agreement was in writing, and that therefore its construction was one of law, to be resolved by the court, and not by the jury. This objection is not raised by assignment of error, and therefore cannot properly be considered on appeal, and we must overrule the proposition upon that ground.

■ Moreover, we are of the opinion there is no merit in the proposition, even if it could be considered in the absence of assignment of error. It was expressly provided in the preorganization agreement entered into by all the parties at interest in both the old and new corporations, that said agreement was "in consideration of said new corporation assuming and agreeing to pay off and satisfy the lawful and valid outstanding present debt due and owing by said (old) corporation." This provision encompassed the old corporation's obligation to appellee, for it is certain that it was then a valid outstanding debt of the defunct concern, and therefore covered by the assumption agreement.

The fact that that debt was omitted from that part of the agreement fixing priorities and specifying the order of payment of the corporate debts could not be given the effect of negativing the assumption of that debt.

 Under the facts of the case it will be presumed that the new corporation assumed the debts of the old, under the established rule of law that, when a successor corporation purchases, takes over and operates the properties and assets of its predecessor, it impliedly assumes the. debts of the latter. This rule is particularly applicable in this case by reason of the fact that the stockholders of the old corporation became stockholders of the new, and the entire assets and properties of the old, including the plant, equipment and the very leasehold upon and by virtue of which it operated, were taken over and constituted the entire property and assets of the new. Moreover, the new corporation expressly assumed the obligations of the old to creditors of the same class as appellee, all evidenced simultaneously by the same character of promissory notes; that is to say, appellant expressly assumed the obligations of the old corporation to its directors, Cole and Wilder, who became directors of appellant. Those obligations were of the same class as that of appellee. They were all executed at the same time, for the same class of debt, and by the same authority, and were of equal dignity. Appellant expressly assumed, and is paying off, Cole and Wilder's notes, but repudiates assumption of, and declines to pay, the obligation to appellee. There must be more reason than that afforded by the record, to perpetrate such rank discrimination. Both the law and the facts render appellant liable for the debt of the old corporation to appellee. 10 Tex.Jur. pp. 668, 1018, §§ 62, 353; Morrison v. Sewell, Tex.Civ.App., 4 S.W. 2d 1029; Diamond Steel Highway Sign Co. v. Latham, Tex.Civ.App., 60 S.W.2d 1055; Annotation 15 A.L.R. 1112, 1116, 1117, 1182. This rule is not affected in this case, by the fact that a judicial sale was resorted to in effecting the transformation from the old to the new corporation. Annotation 15 A.L.R. 1144, et seq. In addition to the legal implication, the contract of reorganization and all the other relative evidence in the case clearly show the unmistakable intention of the parties that the new corporation assume all the debts of the old, including appellee's claim. We overrule appellant's fourth proposition.

 In its fifth proposition appellant complains of the admission of certain evidence in the form of an auditor's report. We need not decide whether the report, having been accepted, adopted and made a part of the records of the defunct corporation, was admissible, since its admission, concerning facts otherwise conclusively established, could not have injured appellant.

In its sixth and seventh propositions appellant complains of the amount of the judgment, and decree of foreclosure thereon. We overrule the propositions. The pleadings and evidence support the judgment in those respects.

We conclude that the judgment rendered below is in accordance with the facts, law, and justice of the case, and it is accordingly affirmed.