## MAFFI v. O'NEIL et al.

### No. 10640.

Court of Civil Appeals of Texas. San Antonio.

Jan. 31, 1940.

Rehearing Denied March 13, 1940.

Grady Barrett and J. B. Lewright, both of San Antonio, for appellant.

George M. Luhn and Terrell, Davis, Hall & Clemens, all of San Antonio, for appellees.

SMITH, Chief Justice.

This action was brought by Nick A. Maffi against Wellington Oil Company of Delaware and its president, John T. O'Neil, to recover a brokerage fee for his alleged services in aiding in the sale of a mineral lease from Mrs. Clara Driscoll (Sevier) to Humble Oil & Refining Company upon lands owned by Mrs. Driscoll and situated in Duval County. Maffi has brought this appeal from a judgment denying him any recovery, upon a directed verdict. The parties will be designated by their names, rather than as parties. In view of the directed verdict, the facts of the case will be stated from the standpoint most favorable to Maffi.

It appears from evidence sufficient to raise jury issues that in the spring of 1935 Mrs. Driscoll authorized Maffi to procure descriptions of her lands and solicit offers from third parties to lease them for oil and gas purposes. The lands were embraced in several ranches, including the La Gloria, the Palo Alto and the Sweden. Maffi procured the descriptions, marked them on maps, and otherwise familiarized himself with the situation and status of the properties. He laid this information before O'Neil, who was acting for Santa Clara Oil & Gas Company, of which he was president and general manager, and who was seeking leases for his company. On Maffi's representations, O'Neil became interested in the Driscoll properties. He had never met Mrs. Driscoll, to whom, it seems, business approach from strangers was difficult. Maffi offered this approach, and it was agreed between the two men that Maffi would give O'Neil a friendly introduction to Mrs. Driscoll, in order to enable the latter to deal personally with her for leases, and that the two men would work together to that end. It was known to them that Mrs. Driscoll would not pay any brokerage commission upon leases to be sold by her. It was agreed, then, that such commission would be exacted of lessees, and O'Neil further assured Maffi that he would "treat him right," and "take care of him" on leases resulting from their joint efforts.

In pursuance of this agreement, which was wholly in parol, Maffi brought Mrs. Driscoll and O'Neil together, and under Maffi's recommendation Mrs. Driscoll dealt directly with O'Neil, as well as with Maffi.

Those dealings resulted in Santa Clara Oil Company's procuring leases, first, upon the La Gloria Ranch, and, second, upon the Palo Alto. For his services in these transactions the Santa Clara Company paid Maffi a cash brokerage fee on each of the two leases. All this occurred in the spring and early summer of the year 1935.

Now, the Sweden Ranch was not then subject to lease, for the reason that a lease thereon was under option to Continental Oil Company, the exercise of which option was not subject to termination until several months later, and although it was said Mrs. Driscoll was not "satisfied" with the contract for that option, or with performance thereunder, there were no negotiations concerning that Ranch between Mrs. Driscoll, Maffi, O'Neil or his Santa Clara Oil Company, at that time. About a year after its lease of LaGloria and Palo Alto Ranches, Santa Clara Oil Company, for which O'Neil was acting, sold and transferred all its physical assets to Wellington Oil Company of Delaware, a Delaware Corporation, for a consideration of 375,000 shares of Wellington capital stock issued to stockholders of Santa Clara Company. And O'Neil became president and general manager of the Wellington Company, as he was of the Santa Clara Company. Both corporations had other, but not all, officers and stockholders in common. Wellington had from 400 to 600 stockholders, Santa Clara, nine. The record is silent upon the provisions of the contract by which Wellington acquired the assets of Santa Clara; specifically, it does not show what provision, if any, was made in said contract looking to the assumption of, or reservation against, liability for the outstanding contracts and obligations of the Santa Clara Company.

The record discloses that after procuring leases for Santa Clara Company upon Mrs. Driscoll's La Gloria and Palo Alto Ranches, in the early summer of 1935, Maffi and O'Neil had no further active dealings together. The record further shows, however, that two years later, in June, 1937, O'Neil, ignoring Maffi, privately effected a lease to Humble Oil & Refining Company to Mrs. Driscoll's Sweden Ranch, on which, in the meantime, inferentially, the option previously held by Continental Oil Company had been allowed to lapse. Humble Company paid Mrs. Driscoll a cash consideration of $115,745 for the lease. Some two months after the Humble Company secured the lease on the Sweden Ranch, that Company assigned a 1/64 overriding royalty interest therein to appellee Wellington Oil Company of Delaware, as a brokerage fee for procuring that lease. It is that brokerage fee that is in controversy here.

Maffi brought this suit against O'Neil and Wellington Oil Company of Delaware, contending that the lease of the Sweden Ranch to the Humble Company in June, 1937, was made by virtue and in pursuance of his parol agreement with O'Neil, in the spring of 1935; that in that agreement O'Neil was acting for Santa Clara Oil Company and therefore bound that corporation to pay Maffi a broker's commission upon said lease; that by purchasing all Santa Clara Company's assets in 1936, appellee Wellington Oil Company of Delaware assumed, as a matter of law, to perform all existing contracts of Santa Clara Company and particularly the latter's obligation to pay him a brokerage fee upon the sale of the lease upon the Sweden Ranch to the Humble Company whenever and to whomsoever it was consummated. Maffi prayed for judgment for one-half interest in the 1/64 overriding royalty acquired by appellee Wellington Company from the lessee, Humble Company, or, in the alternative, for a reasonable cash commission on said lease, which he placed at $18,500. As stated, the trial court denied any recovery to Maffi, who brought this appeal. Maffi does not question, by proper assignment of error, the judgment in favor of O'Neil, but insists he was entitled, under the record, to recover of appellee Wellington Oil Company of Delaware.

■ Generally, the appeal presents three questions: First, was the evidence sufficient to support a jury finding of an agreement by O'Neil, for Santa Clara Oil Company, to pay Maffi a broker's commission upon leases obtained by Santa Clara Company upon Mrs. Driscoll's named ranches? Second, was the parol agreement, as it affected the lease of the Sweden Ranch to the Humble Company, within the Statute of Frauds denying enforcement of parol contracts not performable in one year? And, third, was Wellington Oil Company, a Delaware corporation, bound, as a matter of law, to perform the obligation, if any, of Santa Clara Company to Maffi, because of its purchase of the physical assets of the latter corporation, and acceptance of the benefits of Maffi's efforts? At the close of the testimony the trial judge, in announcing his purpose to direct a verdict against Maffi, indicated

that he would so rule because of the insufficiency of the evidence to show "an agreement," that he did "not believe the evidence will sustain a verdict, if you (Maffi) get it." It is the duty of this Court to affirm the judgment if it can be sustained upon any ground, or theory, or if, for any reason, Maffi was not entitled to recover.

■ We are of the opinion that the evidence was sufficient to raise a jury issue of whether O'Neil, conceded to be acting for Santa Clara Oil Company, agreed to compensate Maffi for his services in aiding O'Neil in securing leases upon the Driscoll ranches. It is true that the amount, or basis for computation, of such compensation was not stipulated in the agreement. But such omission was not fatal to the agreement, for the law writes into such an agreement the provision that the compensation shall be a reasonable sum, to be fixed by the jury, or by the court, according to whether the case is tried to a jury or to the court, to be arrived at from other dealings between the parties, or from prevailing custom. This is an elemental rule, uniformly applied in this State.

■ Appellee Wellington Oil Company contends that the evidence was brought under the ban of the Statute of Frauds, which condemns parol contracts which are not to be performed within the period of one year from the time they are entered into. Art. 3995, § 5, R.S.1925. We cannot agree to this contention. It is conceded that the parties set no limitation upon the time within which the contract was to be performed. So is it conceded that a period of two years elapsed from the making of the agreement to the consummation of the lease upon the Sweden Ranch, in which transaction appellee Wellington Company, through O'Neil's efforts, earned and collected the brokerage fee in which Maffi claims an interest. But the evidence shows, or at least raises the fact issue, that Maffi fully performed all the services to which he was obligated, or at least the whole contract of both parties was capable of being performed, within the one-year period. In such cases the contract is not within the prohibition of the Statute of Frauds, and is enforceable. 20 Tex.Jur. pp. 256, 259, §§ 43, 50, and authorities there cited.

■ And, finally, appellee contends that under the disclosed facts of the case it cannot be held liable for the obligation of its predecessor, Santa Clara Oil Company, to share with Maffi the brokerage fee earned and collected by it in procuring ·the Humble Company's lease on Mrs. Driscoll's Sweden Ranch. Assuming that that lease was effected as a result of Maffi's aid, under the agreement with O'Neil for the Santa Clara Company (an issue improperly withheld from the jury), Santa Clara was obligated to compensate Maffi for that service. The inquiry is therefore narrowed to the question of whether appellee Wellington Company of Delaware assumed that obligation of its predecessor, Santa Clara Company. The evidence is undisputed that Santa Clara Company was a Texas corporation, chartered and beginning operations in 1934. The contract was made with Maffi in 1935. In June, 1936, appellee Wellington Company was organized and chartered under the laws of Delaware, and Santa Clara thereupon sold and transferred all of its physical assets to appellee, which also at the same time took over all the physical assets of a third corporation, Wellington Oil Company, Ltd. As consideration for those transfers appellee issued 375,000 shares of its capital stock to stockholders of Santa Clara Company and 425,000 shares to stockholders of the Wellington Company, Ltd. In this reorganization O'Neil, president and general manager of Santa Clara Company, became president and general manager of appellee, the new company, and thenceforward operated the latter's business in the same offices, and with substantially the same officers and employees, as the obliterated Santa Clara Company. A year later appellee, the successor corporation, through O'Neil, effected the lease of the Sweden Ranch to the Humble Company, in conceded consequence of the aid given O'Neil, for the Santa Clara Company, in putting him in favorable business touch with Mrs. Driscoll, and initiating the several deals which resulted in O'Neil's acquiring leases upon the three Driscoll ranches. And appellee collected and appropriated the brokerage fee thus earned through Maffi's initiation of the transaction. In short, the efforts of Maffi inured to the benefits of appellee, which accepted and retained the benefits, with conceded full knowledge of Maffi's procuring efforts. We are of the opinion that in this state of facts appellee—having acquired all the assets of Santa Clara, including the contract with Maffi, which it adopted as its own, and having acted upon and accepted the substantial benefits derived from that contract, with full knowledge of the entire transaction—will be held, as a matter of law, to have assumed the reciprocal obligation of its prede-

cessor, to compensate Maffi for his performance under that contract. 10 Tex.Jur. pp. 668, 1018, §§ 62, 353, and authorities there cited; Victoria Gravel Co. v. Neyland, Tex.Civ.App., 114 S.W.2d 415.

We conclude that the matters discussed were raised by the evidence and that the trial court erred in taking the issues from the jury.

The judgment is reversed and the cause remanded.