**BACA et al. v. WELDON.**

No. 12085.

Court of Civil Appeals of Texas.
San Antonio.

May 10, 1950.

Rehearing Denied June 7, 1950.

Fischer, Wood, Burney & Glass, Corpus Christi, for appellants.

Hyde, Barber & Shireman, Corpus Christi, for appellee.

BROETER, Justice.

On April 16, 1948, E. G. Weldon filed this suit against Hugo Baca, an individual (doing business as American Specialty Company), and American Specialty Manufacturing Company, Inc., for an accounting and commissions alleged to be due under a written contract entered into on November 30, 1946, between him and Hugo Baca, doing business as American Specialty Company. On the date of the contract Hugo Baca was engaged in the manufacture and sale of fishing equipment at Corpus Christi, Texas, and by its terms Weldon agreed to represent and aggressively push all merchandise manufactured by American Specialty Company and was to receive as compensation certain commissions and bonuses on all merchandise shipped or billed by said company. The contract was for two years from its date and provided that either party could cancel same upon ninety days' notice, and in event of cancellation Weldon would

receive commissions and bonuses accruing for six months after date of cancellation.

On December 8, 1947, Hugo Baca's business was in financial difficulties and on said date, and at different times thereafter, Dr. E. A. Danford placed money in such business and the same continued to operate until February 16, 1948, when such business was incorporated under the name of American Specialty Manufacturing Company, Inc., with Dr. Danford taking 51% of the stock and Hugo Baca and wife 49% thereof.

Plaintiff, E. G. Weldon, attached a copy of the contract of employment above referred to as an exhibit to his petition and alleged that he had fully complied therewith and that the American Specialty Manufacturing Company, Inc., took over and acquired all of the assets and liabilities of Hugo Baca, doing business as American Specialty Company and that there were commissions due him which defendants refused to pay, and prayed for an accounting and that he have judgment for at least $7,-000, and for further sums as shall be found due on such accounting. The defendants claimed that the written contract with Weldon had been cancelled by agreement and a new contract entered into, and that plaintiff had abandoned any attempt to represent them on March 1, 1948, and by such action breached the contract. Hugo Baca also alleged that $1,032 was all he owed plaintiff, which he was willing to pay, but that plaintiff was demanding a sum far in excess of the amount to which he was entitled.

The case was tried with the aid of a jury and only three special issues submitted to the jury, and the jury found that such contract of employment had not been cancelled by agreement; that no new contract had been entered into, and in answer to Special Issue No. 3, wherein they were asked whether "E. G. Weldon on or about March 1, 1948, was discharged by the defendants or voluntarily abandoned performance of the contract," the jury answered, "he was discharged."

The court appointed an auditor to show sales of business from November 30, 1946, through August 31, 1948, and the auditor made a report thereof and supplemental reports, which were introduced in evidence without objection and no special issues were submitted to the jury concerning any amount of commissions or bonuses due E. G. Weldon. The court arrived at the amount of the judgment from a consideration of the auditor's reports and no points are presented to us attacking the amount of the judgment. The trial court, upon findings of the jury as outlined above, entered judgment in behalf of E. G. Weldon against Hugo Baca, doing business as American Specialty Company, and American Specialty Manufacturing Company, Inc., for the sum of $7,205.23, with interest at 6% on different portions thereof from different dates, and for all costs of suit. From this judgment the defendants appealed.

By the first point the American Specialty Manufacturing Company, Inc., claims that the trial court erred in holding it liable on the contract of E. G. Weldon with Hugo Baca, doing business as American Specialty Company, because it was not a party to nor had it assumed said contract. We do not believe this point well taken.

It is well settled that where individuals or partners form a corporation which takes over all the assets of the individuals or partners, the corporation assumes the liabilities of the partners or individuals, as a matter of law. Morrison v. Sewell, Tex.Civ.App., 4 S.W.2d 1029 (writ dismissed); Meadows v. Mitchell, Tex.Civ. App., 39 S.W.2d 106 (San Antonio Civ. App.); Maffi v. O'Neil, Tex.Civ.App., 138 S.W.2d 134 (San Antonio Civ.App.); Wellington Oil Co. of Delaware v. Maffi, 136 Tex. 201, 150 S.W.2d 60 (Supreme Court); Hunger v. Toubin Bros., Inc., Tex.Civ.App., 164 S.W.2d 765 (writ dismissed); Religious Films, Inc., v. Potts, Tex.Civ.App., 197 S. W.2d 592 (Galveston Civ.App.); English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633 (writ refused); 10 Tex.Jur. p. 1018.

The record discloses that Hugo Baca, doing business as American Specialty Company, on November 30, 1946, was engaged in the manufacture and sale of fishing equipment, and that on said date he entered

into the contract with E. G. Weldon on which this suit is based. The contract required E. G. Weldon to aggressively push all merchandise manufactured by the American Specialty Company, and the said E. G. Weldon was to receive as compensation certain definite stated percentage as commission and bonus on all merchandise shipped or billed by said company. The contract was for a period of two years. Weldon performed his duties under the contract and received some checks from Hugo Baca for his services until December 8, 1947, at which time Hugo Baca found himself in financial difficulties and could not meet some liabilities, among them, payment for certain material designated as brass, then billed to him and in the possession of the railroad. Upon communicating with Dr. E. A. Danford he advanced several amounts of money to Hugo Baca, evidenced by checks dated December 8, 1947. Dr. Danford testified that he had known Hugo Baca for nine years or more and that he first visited Hugo Baca's place of business in connection with seeing if he could help him on or about December 1st, or perhaps the last of November, 1947. He advanced to Hugo Baca on December 8, 1947, the following amounts: $689.22 for brass on siding, $1,480.38 for brass on tracks, and $415.89 for a pay roll. Dr. Danford deposited in the Corpus Christi Bank and Trust Company to the credit of American Specialty Company $1,200 on December 12, 1947, which he testified "was the first time he put any money into the business in the attitude of taking an interest or investing in the business." The evidence further shows that after December 12, 1947, and before the company was incorporated, which was on February 14, 1948, Hugo Baca and Dr. Danford operated the business, sold $10,718.09 in products, and gave joint checks in payment of its obligations, some of which were to Weldon for commissions, and that before such checks were given Mrs. Danford, at her husband's request, had made careful inspection of the business and an inventory of its assets as well as one of its liabilities had been prepared, and such inventories were introduced in evidence. The evidence further shows that Hugo Baca and wife, Tillie Baca, entered into a written agreement with Dr. Danford on January 24, 1948, whereby they agreed to incorporate the business under the name of American Specialty Manufacturing Company, Inc. From the above evidence and other evidence in the record it is apparent that Dr. E. A. Danford on December 12, 1947, became interested in and was part owner of the business that had theretofore been oprated and owned by Hugo Baca, doing business as American Specialty Company. The record further shows that all of the machinery, material accounts receivable and equipment of the American Specialty Company were transferred to the American Specialty and Manufacturing Company, Inc., and that Dr. Danford received 51% of the stock and became president of the corporation, and Hugo Baca and his wife, Tillie Baca, received 49% of the stock, and that said corporation continued to operate such business, accepted and filled orders then on hand for goods and issued some checks to Weldon for commissions earned under the contract. Dr. Danford had knowledge of the contract that Hugo Baca had entered into with E. G. Weldon and was acquainted with its obligations. He testified that it did not suit him and that Weldon and Baca had agreed to cancel it and enter into a new contract, but the jury in this connection found as above indicated.

 The principle of law announced above applies, and the lower court correctly held that the corporation by taking over and accepting the assets of the partnership became liable for its obligations. This we believe to be correct where the same parties that were engaged in the partnership formed the corporation, and where the corporation recognizes the contract, accepts the benefits of the employee's services and issues some checks to him for commissions earned under the contract. 10 Tex.Jur. p. 1018. Appellants' first point is overruled.

Appellants, by their second point, claim "The court erred in holding Hugo Baca liable on the contract for commissions accruing after the formation of the American

Specialty Manufacturing Company, Inc., because after such date Baca was only a minority stockholder in said corporation and did not individually do any manufacturing after that date." There is no merit in this contention. This is a suit for commissions and bonuses due under a written contract signed by Hugo Baca, doing business as American Specialty Company, with E. G. Weldon and for an accounting. The contract was for a period of two years and contained the following paragraph with reference to the commissions and bonuses that Weldon should receive, to wit: "That E. G. Weldon will represent and aggressively push all merchandise manufactured by American Specialty Co., and is to receive as compensation the following commissions and bonus. 10% on all merchandise shipped and/or billed by American Specialty Co. 1½% extra on all shipments and/or billings within any calendar month that reaches a figure of $4,500.00 or more. ½% on total business that reaches or exceeds $40,000.00 within each six months period starting January 1st, 1947. ½% on total business within any calendar year that reaches or exceeds $75,000.00 effective January 1st, 1947."

The suit was filed on April 16, 1948. The jury found in answer to Special Issue No. 3, that the plaintiff, E. G. Weldon, was discharged on March 1, 1948. At the request of Hugo Baca, Dr. E. A. Danford on December 12, 1947, became interested in the business as a partner. They continued to operate the business until February 14, 1948, when the American Specialty Manufacturing Company, Inc., took over all of the assets of the partnership. This is not a suit against the partnership, no issue is raised denying liability on the part of the partners. As a result of the contract which Hugo Baca signed he became liable thereon, and the corporation which succeeded the partnership, as a matter of law, assumed the liability of such partnership. The assumption by the corporation of liability for the fulfillment of Baca's contract with Weldon could not relieve Baca of liability thereon. We believe that the commissions and bonuses to which E. G. Weldon was entitled as stated in the contract were definite and fixed thereby and were only dependent upon the amounts of shipments and billings made during the two-year period. Especially is this true when the accounting was reported and the case tried after the expiration of the two-year period. The amount due as commissions and for bonus became definite and fixed when the goods were sent out and the accounting reported the amount of goods shipped and billed. So far as we have been able to learn from the briefs, it is not contended that Hugo Baca was at any time released from his liability on the contract. Weldon did not sue for any amount of commissions or bonus which he might have earned had he been permitted to continue with his sales contract, but he sued simply for what he claimed to be due him, and he prayed for an accounting that the amount may be determined. We believe the accounting fixed such amount definitely and the report of the accounting was filed and introduced in evidence and no objection was made thereto. The case of Farracy v. Security National Bank, Tex.Com. App., 29 S.W.2d 1043, wherein it was determined that the Southwest Bank which had assumed the liability of the Security National Bank did not relieve the Security National Bank from liability or its obligation, but both banks were liable thereon, is authority for holding that Hugo Baca was not relieved from liability by virtue of the assumption by the American Specialty Manufacturing Company, Inc., of his obligation under the contract. Point No. 2 is overruled.

Appellants' third point is as follows: "The Court erred in allowing Weldon to recover commissions for 9 months after he did not work because: (1) To be entitled to such commissions he should have worked an additional 90 days; (2) By performing no further work he accepted the breach, if any, and his measure of damages would have been the value of the contract on said date; (3) The contract was not cancelled on the terms provided therein to entitle Weldon to such commissions."

There is no merit in this point. E. G. Weldon worked for the appellants and performed all of the duties required of him under the contract, until March 1, 1948,

at which time he was discharged. Weldon did not seek to insist upon the performance of the contract and he did nothing further after being discharged. He accepted the termination of the contract by his employer and filed suit and asked for an accounting in order to determine what commissions and bonus he was entitled to on the sales made by his employer during the period of the contract. At the time he filed suit he estimated his claim to be $7,000 and he prayed for an accounting and for judgment for at least the sum of $7,000 and such other sums as should be found due on such accounting, with interest and costs. Based on the accounting, the trial court allowed him a judgment for $7,205.23. The amount of the judgment was the liability for commissions and bonus on the date of the trial, which was after the expiration of the two-year period of the contract. Weldon, if he had worked, may have pushed the sales of his employer to an amount in excess of what the accounting actually showed, but he does not make such claim, nor does he ask for damages for any commissions which he might have earned had he been permitted to proceed with the performance of the contract. In Smith v. Lipscomb, 13 Tex. 532, wherein an attorney sued for the balance of his fee, he was held to be entitled to recover the full amount of the fee when he was dismissed before full performance by him, the Court says: "The plaintiff below, Lipscomb, then, was entitled to recover, though everything was not in fact done by him which was required by the agreement, because the act of Smith by preventing excused the non-performance, and it was as if there had been a perfect performance by Lipscomb."

Again it is said in Dodds and Wedegartner v. Reed, Tex.Civ.App., 69 S.W.2d 165, 167: "Where a party in whose favor something is to be done prevents that performance and the other party is not in default, a recovery may be had as if the act had been performed."

To the same effect are the cases of Sanderson v. Sanderson, 130 Tex. 264, 109 S.W. 2d 744, 745, and Miller v. Hodges, Tex. Com.App., 260 S.W. 168.

The clause in the contract to the effect that "this is made for a period of two years from date, with the provision that either party can cancel same upon ninety days written notice," is simply a privilege and option given to the parties to the contract whereby they have a right to cancel the same upon the giving of the ninety days written notice. It is undisputed that neither party to this contract gave ninety days written notice. There was no effort made to cancel the contract under these provisions. Weldon was discharged. The clause of the contract providing for cancellation does not apply in the situation that arose by Weldon's discharge. Appellants' third point is overruled.

■ Appellants' fourth point is without merit. This being a suit for an accounting, the trial court did not err in allowing the recovery of all commissions shown by the audit to be due at the time of the trial. It is said in Samuels v. Finkelstein, Tex.Civ. App., 25 S.W.2d 923, 926: "There was a general prayer for an accounting which, in proceedings of this nature, is sufficient to invoke the jurisdiction of the court and to sustain a judgment in plaintiff's favor for any amount found due him on the accounting. 1 C.J. 637; Fechteler v. Palm Bros. & Co., 6 Cir., 133 F. 462; Title Ins. Co. v. Ingersoll, 158 Cal. 474, 111 P. 360."

Point four is overruled.

■ By Point No. 5 appellants contend the trial court erred in excluding the testimony of Mrs. Danford to the effect that in the letter dated March 2, 1948, by the term "new contract" she meant "new written contract." The evidence in this case shows that on March 2, 1948, Hugo Baca wrote a letter to E. G. Welson in which he said: "I would call your attention to our discussion following the change in my company. If you will recall, we discussed the fact that your old contract would expire when the corporation was formed. We also discussed the terms of the new contract, which we contemplated giving you in the near future, and you agreed to those terms."

Mrs. Danford typed but did not sign this letter, and we do not think any explanation

that she offered in connection with the meaning of the term new contract is material.

Defendants contended that Weldon had orally agreed to cancel the contract sued on herein and had entered into a new oral contract, whereby Weldon was to be paid 10% commissions on sales and which contained other provisions than the one cancelled. Baca, Dr. Danford and Mrs. Danford testified as to such agreement and there was other evidence as to its existence. Weldon denied the same and the jury, in answer to special issues submitted, found that Weldon's contract of November 30, 1946, had not been cancelled by agreement and no new contract had been entered into. The letter sought to be explained was offered by plaintiff to show assumption of contractual liability by payment to him of commissions by the corporation and, no doubt, to show that no new contract had actually been consummated, and the letter did tend to establish that. For Mrs. Danford to testify that a new written contract was contemplated would also tend to show the parties had not agreed to the oral contract as plead, and the jury so found. The letter recited that Weldon and Baca had discussed terms of the new contract "which we contemplate giving you in the near future," and that Weldon had agreed to the terms. The letter was objected to on the ground that "same speaks for itself," and the objection was sustained. Further, the record in this case shows that Mr. Baca, who signed the letter sought to be explained by Mrs. Danford, testified as to discussions had by Danford and Weldon in his presence, as to cancellation of the contract and entry into a new one, and said: "They said they would give him a written contract," and "the doctor promised to submit to Weldon a new contract but none was submitted up to March 2." The testimony offered would at most only be cumulative. Appellants' fifth point is overruled.

What we have said above, in ruling upon points numbered 1, 2, 3 and 4, disposes of Point No. 6 made by appellants, to the effect that the court erred in rendering judgment for the entire amount of the judg-ment against both Baca and American Specialty Manufacturing Company, Inc., and such point is accordingly overruled.

There being no error in the trial, the judgment is affirmed.